14cv10257

14 CV 10257

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

UMAR ALLI,

PLAINTIFF,

V.

SECURITY OFFICER PEDLAR,

SECURITY OFFICER BRAVO,

SECURITY OFFICER AlMAZAR,

SECURITY OFFICER BUNTTON

SECURITY OFFICER JOHN DOE

SECURITY CAPTAIN BEHARRI

CORRECTION OFFICER SPEARS

CORRECTION OFFICER RHOR

CORRECTION OFFICER SPEARS

CORRECTION OFFICER FLIKER

CORRECTION OFFICER WONG

CITY OF NEW YORK

ROSE AGRO AND KATHLEEN MULVEY

HILDY J. SIMMONS, DORA SCHRIRO,

FlORENCE FINKLE, LEWIS FINKELMAN,

MICHAEL J. REGAN, CATHY POTLER,

RICHARD T. WOLF

KENNITH T. ARMSTEAD

JOHN DOE CHIEF OF DEPARTMENT

JOHN DOE DEPUTY CHIEF OF DEPARTMENT

JOHN DOE SUPERVISING WARDEN

JOHN DOE CAPTAIN OF PROBE TEAM

JOHN DOES PROBE TEAM OFFICERS

INVESTIGATION DIVISION/INSPECTOR GENERAL

JOHN DOES OFFICERS WHOM WORKED Visting room/AreA

COMPLAINT

CIVIC RIGHTS ACT

<12 U.S.C 1983

18 U.S.C 241

JURY TRIAL
DEMANDED

"JOHN DOE 1 THROUGH Unknown 'All officers whom were Participants or Witness's of the January 2012 Use of force'"

JOHN DOES 1 THROUGH 2 Adjudication Captains,

JOHN DOES Investigating Captains Of Both the Uses of force in January and february 2014, JOHN DOE DEPUTY WARDEN Of security

JOHN DOES PHYSICIAN P/A Whom endorsed DOC officials request for Treatment In Connection to the January 11 2012 Incident,

CORRECTIONAL HEALTH SERVICES / PRISON HEALTH SERVICES

JOHN DOES 1 Through 6 BOL's field representatives

Pro se Plaintiff, Umar Alli, Hereby alleges as follow;

1. This is a civil rights action in which Pro se Plaintiff Seeks to vindicate rights Secured by The United State Constitution 42 U.S.C § 1983, 18 U.S.C 241, And the first, fifth, Eigth and fourteenth Amendment Of The United States Constitution, and the laws and rights Secured by New York State and Correction law.

2. This Action arises from a series of events beginning on or about January 11 2012 when Plaintiff was maliciously assaulted by named and unnamed defendants. Collectively know as ("Primary assaulting Officers") The "Primary assault" or "Primary Incident" as herein referenced took place at Rikers Island ("Rikers") George R. Vierco Center (G.R.V.C) Subsequently in retailiation Umar Alli ("Plaintiff" or Alli") Was subjected to sexual assault and Unwarranted Use of force herein referenced to as ("Sexual abuse or Secondary assault") by the named and Un-named defendants Collectively known as ("Secondary assaulting Officers".) Lastly Alli was deprvied medical care / treatment and Subjected to cruel and Unusual Punishment and denial of life necessities.

2

3. At most times relevant hereto Plaintiff was a Pre-Trial detainee

4. To conceal the Unwarranted and malicious Primary assault the Primary named and un-named assaulting Officers along with John Doe Investigation Caption 1, Adjudation Captain 1 John Doe Supervising Warden and Warden of G.R.V.C, defined infra Conspired to falsify reports, "Sweep the incident Under the rug", hide the indenity of Participants of the Primary assaulting Officers and to, amongst Other things lodge a disciplinary infraction ("Infraction 1") Against Mr. Alli for a number of falsified Offenses

5. To conceal the Unwarranted Extraction, use of force & Sexual abuse of the Second assault. The Secondary assaulting officers/Probe team Officers, John Doe Investigation Captain 2, Adjudication Captain Conspired With Other named and un-named defendants to falsify reports and to amongst Other things lodge a disciplinary infraction ("Infraction 2") Against Mr. Alli for a number of falsified Offenses

6. While a hearing was held for the Primary Assault ("HEARING 1") and a hearing was held for the Secondary Assault ("HEARING 2") in Connection with the infractions, the hearing was riddled with due Process violations, Which ran afoul of Mr. Alli's Constitutional rights. The Policies and directives of the New York City Department of Correction (the "Department" or "DOC") and the laws of the State of New York

7. As a Consequence of these massive breaches, Mr. Alli was mandated to be Confined to disciplinary segregation for an extended Period. During which time Certain named-Defendants Caused Plaintiff to endure heinous Confinement Conditions and exhibited deliberate indifference towards Mr. Alli's Serious Medical needs.

8. As a result of these and Other deprivations described herein, Mr. Alli Suffered Physical and Psychological Pain

discomfort and humiliation, including, but not limited to, Permanent and non-permanent physical injuries and Sexual assualt

9. As a result Mr. Alli seeks monetary damages (special, compensatory, and punitive) against all defendants, Public disciplining and Sanctioning of certain defendants named herein, an award of Cost and litigation fee's.

10. Mr Alli also seeks to invoke U.S.C Title 18 Section 241 against all defendants in their official and individual capacity Seeking defendants to Pay a fine of up to Ten Thousand for each violated right and the imprisonment, of All Assaulting officers, of no less than one year and no more than Ten years. And as the court deems Just and Proper

## JURISDICTION AND VENUE

11. JURISDICTION is Proper Under 28 U.S.C §§ 1331 because Plaintiff seeks to enforce rights secured by 42 U.S.C §§ 1983, 1988 And 18 U.S.C 241.

12. Venue is Proper in this court Pursuant to 28 U.S.C §§ 1391 (b) and (c)

## DEMAND FOR JURY

12. Plaintiff hereby demands a trial by Jury On any and all issues Pertaining to this action includi but not limited to, damages.

## THE PARTIES

13. Plaintiff Umar Alli, Currently detained at Great MEADOW CORRECTIONAL FACILITY, At most times relevant hereto Mr. Alli was a Pre Trail detainee in DOC Custody, at GRVC

14. Defendants Beharri, Pedlar, Bravo, Almanzar, Spears, John Doe Officers whom Worked The Visiting Area On January 11 2014, And John Does Officers whom were Present or Participants Of the January 11 2014 use of force (SOME JOHN DOES were identified by the investigation Department/inspector general, and facility investigations) Defendants are collectively "Primary Assaulting Officer". were at all times referred to in this Complaint, Uniformed Correction Officers employed by DOC and assigned to G.R.V.C. THE Primary assaulting officers were required to Conduct their responsibilities in accordance with Departmental directives governing (directive 5006-c) use's of force, inmate access to medical care, and the minimum standards governing Conditions OF Confinement established by the New York City Board of Corrections ("BOC") The Primary assaulting Officers Used a malicious amount of excessive force with out good faith or Penological interest. Defendants acted, maliciously with the intent to Cause harm, deliberate indifference and with the scope of their DOC Employment and under color of state law. Defendants Of the Secondary assualt Such as, JOHN DOE Probe Team OFFICER John DOE Probe Team Captain, Officer Bunton, Officer Wong, and Officer fluker collectively referred as ("SECondary assaulting Officers) have Violated the Same laws, rights and responsibilities and acted malicously Just as the Primary assaulting Officers. All Stated defendants are Sued

in there individual and Official Capacity

14. Defendants beharri, John Doe Captain of Probe Team, John Doe investigating Captain (supervisor)1, and John Doe investigating Captain (supervisor)2. Collectively ("Uniformed and Supervisory Officers") were, at all times referred to in this Complaint, uniformed Officers, Captains/Deputys, and or first line supervisory officers Or internal investigators employed by DOC and assigned to GRVC. Uniformed Supervisor Officers were required to Perform their duties in accordance with Departmental directives governing the use Of force, investigation there of, inmate access to medical care, due Process and minimum standards. Defendants acting in the Capacity Of an agent, servant and employee of D.O.C and New York City within and outside the Scope of there employment and acting under Color of state law. Defendants falisified documents to Cover the malicious assaults, Encouraged, Aided & Abetted and or failed to intervene in the Ceasing of the subordinate's use of excessive force. Defendants are being sued in there Official and individual Capacit

15. At all time relevant hereto, Adjudication Caption 1 (The hearing Officer Whom Presided Over the disciplinary hearing in Connection with the January 11 2012 Use of force) and Adjudication Captain 2 (hearing Officer whom Presided Over the disciplinary hearing in Connection with the February 2012 Use of force). The Adjudication Captains acting in the Capacity of an agent, servant and employee of D.O.C. Is responsible in ensuring disciplinary hearing are held in accordance to DOC Directive 6500 R-B and that all detainees receive fair trail without Due Process Violations. Yet defendants violated itr Alli's due Process clause Of the fourteenth Amendment, Eight Amendment, and minimum Standards of D.O.C. Depriving life liberty and Property

without due Process of Law. Defendants acted with deliberate indifference disobeying the rules and directives govered by there Position. Defendants directly Participated in the due Process Violation and civil rights violation. Adjudication Captain 1 and 2 acts Caused mr. Alli atypical and significant hardship and wrongful Confinement in disciplinary segregation. Resulting in deprivation Of Plaintiffs Personal liberty and regular enjoyment Of Prison Life in general Population. Adjudication Captain 1 also aided and abetted in the long standing deeply embeded unconstitutional Policy Of Sweeping the factual allegations Surrounding use of force under the rug. Adjudication Captain 1 intentionally denied the request for Camera footage to Cover the indenity Of Primary assualters. Both Adjudication Captain 1 and 2 are being sued in there individual and official Capacity.

16. At all times relevant hereto, Defendants Kathleen Mulvey Warden Of G.R.V.C, Defendant Rose Agro Supervising Warden Jt G.R.V.C during most times relevant hereto, Defendant John DOE Supervising Warden during the remaining times relevant hereto, Defendant John Doe Deputy Warden of Security Of GRVC, Were responsible for the Supervision Of Primary and secondary assaulting officers as well as Uniformed and Supervisory officers, and the Care, Custody and Control Of inmates Confined to GRVC. These responsibilities Were and are required to be Conducted in accordance with the legal mandates applicable to DOC facilities, including but not limited to directives governing the use of force, inmate access to medical Care, inmate grievance Procedure, due Process and BOC minimum Standards. At all times relevant hereto defendants Stated herein acted within the Scope of their employment and under Color Of State law. Defendants are being

7

sued in their individual and official Capacities.

17. Defendants Dora Schriro and Lewis Finkelman were at all times relevant hereto, The Commissioner and first Deputy Commissioner OF DOC. Respectively defendants Schriro and Finkelman are legally responsible for the operation of all of the Department's facilities, including but not limited to the selection, Supervision, promotion, training and discipline of all uniformed and Supervisory staff and for the care Custody and Control of all inmates in DOC Custody. These responsibilities were and are to be Conducted in accordance with legal mandates applicable to DOC facilities, including but not limited to directives governing the use of force, inmate access to medical care, inmate grievance procedures, and due process. Both defendants were aware of the unwritten policy of the use of excessive force. Defendants were on notice of Mr. Ali's claims and all assaulting officers prior malicious conduct yet failed to discipline or remedy the actions. At all times relevant hereto defendant Schriro and Finkelman acted within and outside their scopes of duty and under color of state law these defendants are sued in their individual and official Capacities.

18. Defendant florence finkle was at all times reffered to in this Complaint, The Deputy Commissioner of integrity and policy for the DOC. In this role defendant Finkle was responsible for ordering and supervision of investigations of all uses of force incidents and for initiating recommendations for disciplinary action against officers, Captains and deputy's who engage in Misconduct. These responsibilities were to be Conducted in accordance with the legal mandates applicable to DOC facilities. At all times hereto, Defendant finkle acted within and outside her scope of DOC employment and under color of state law. She is Sued in her individual and official Capacity.

19. DEFENDANT "JOHN DOE", who was the "Chief of the department" at all times relevant hereto was responsible for the supervision, oversight and discipline of the assaulting officer and uniformed officers herein, including the supervisory officers in all departmental Jails including but not limited to G.R.V.C. These responsibilities were and are to be conducted in accordance with the legal mandates applicable to DOC facilities. Defendant aided and abetted in the long standing deeply embeded unwritten unconstitutional Policy and Practice of not sanctioning officers for misconduct. Said defendant acted under color of State law and is sued individually and officially.

20. Defendant "JOHN DOE" who was the "Deputy chief of department" at all times relevant hereto, was responsive for monitoring and addressing all operational safety and security matters in DOC facilities including but not limited to G.R.V.C. These responsibilities included maintaining statistics on violence and violent incidents at DOC facility's. Also creating Procedures to protect personal safety of D.O.C staff and inmates within DOC custody. Defendant aided and abeded in the long-standing unwritten Policy and Practice of covering up excessive use's of force. Defendant acted under color of State law and is sued in the individual and official capacity.

21. Defendants Micheal J. Regan and Hildy J. Simmons were, at all times relevant hereto, The chair and vice-chair of the "Board of Correction" (BOC), respectively. Defendant Regan and Simmons were responsible for establishing and ensuring compliance with BOC minimum standards regulating conditions of confinement and health care in all New York city ("city") correctional facility's. Regan and Simmons were required to actively investigate serious incidents. Evaluate DOC performance, review inmate grievance and make recommendations concerning the same. Defendants aided and abetted in the long-standing un-written Policy of failure to discipline and or remedy and or investigate allegations of excessive force.

9

Defendants acted outside and within the scope of their Doc Employment and under color of State law. Both defendants are sued in their individual and official capacity.

22. Defendants Cathy Potler and Richard T Wolf, ESQ were at all time relevant hereto The "Excutive Director" and "Deputy executive Director" of the BOC respectively. These full time DOC Employees were responsible for ensuring that health care, safety and security and use's of force within all facilities was maintained "at a level consistent with legal requirement accepted Professional Standards and sound Professional Judgment and Practice" Togather, defendants Potler and Wolf were responsible for monitoring the Compliance of all DOC facility's with these minimum. At all times hereto defendants Potler and wolf acted within the scope of their DOC Employment and under color of state law. These defendants are sued in their individual and official capacity.

23. Defendant Kennith T. Armstead was at all times relevant hereto the "Director of field operations" and a full time Employee of B.O.C In this role, Defendant Armstead supervised the daily activies of the daily field representatives who are required to canvas Doc facility's daily for the Purpose of monitoring Compliance with BOC Minimum standards. In this role, Defendant Armstead was required to Conduct frequent and targeted inspections of D.O.C facilt'ys to identify and resolve known Problems, including but not limited to unjustifiable uses of force and conditions of confinement, in breach of BOC Minimum standards At all times relevant hereto defendant Armstead failed to discipline Sanction, investigate, and or aided and abetted in the Covering up of the routine use's of force. Defendant is being sued in his official And individual capacity

24. Defendant City of New York ("City") is a municipal Corporation which, through the department, operates a number of detention facilities, including G.R.V.C. The City through its senior officials

10

at the city or central office and in each facility, Promulgates and implements Policy's including but not limited to the use reporting and investigation of force employed by uniformed staff, inmates grievance Procedures, due Process and inmate access to medical treatment and other Services mandated by local law and court order. The city is also responsible for the appointment, training, monitoring, supervision, hiring and Conduct of all DOC and BOC Personnel including the defendants of this action The city is sued in the official capacity.

25. Defendants Armstead, Finkleman, Finkle, Potter, Wolf, Simmons, Schriro, regan, Argo, Mulvey, John Doe cheif of department, John Doe Deputy cheif of department, John Doe supervising warden, and John Doe Deputy warden of security are herein collectively refferred to as ("Policy-Making Defendants") Said defendants were put on notice of mr. Alli's claims yet failed to disciplin Sanction, investigate the uses of force, conditions of Confinement, and or Aided and abetted in the Continuance or Covering up of the Misconduct that was deeply embedded and long-standing Un-written Policy consituting Law.

26. At all times relevant hereto John DOE's 1 Through 6 were field representatives Serving as BOC's "Eyes and ears" into city facility's These defendants were responsible for Conducting site visits at all Doc facility's for the purpose of documenting and investigating Prisoner and staff complaints and violent and unusual incidents. At all times relevant hereto John Doe 1 through 6 acted within and outside the scope of their Doc Employment and under color of state law. The Defendants are sued in their individual and official Capacity.

27. Defendants Correctional Health Service / Prison Health services employed by the city and working within the Departmental facility's, and are at all times relevant hereto responsible for Providing and assuring adequate medical care and treatment. Defendants are also responsible to investigate any and all medical complaints fully and Provide the needed treatment and follow-up's. Defendants are responsible for all

11

Conduct of medical personnel including but not limited to Doctors and nurse's. Defendants failed to Provide medical care, follow-up medical care, requested Treatment, And intervened With necessary medical care. thus Causing Unwarranted Pain and Suffering, and Cruel and unusual Punishment. Defendants are sued in Offical capacity.

28. Defendants John DOES "Physician P/A" whom endorsed Doc officials request for treatment, In Connection with the January 11 2012 use of force. Said defendant falisified reports with the intent to Cover the malicious use of force and make matters look wrost or even exist when no Injuries On Officials were truly found. Defendant acted outside the scope of his employment and under Color of State law, and is being sued in the Official and individual Capacity.

29. Defendants Inspector general and Investigation Department ("ID") Which ever one is applicable, were and are at all times relevant hereto Employed by the City and or New York State. Defendants Inspector general ("IG") and Investigation Department is responsible for the Sanctioning, disciplining And investigating use of force and or unusual incidents, Within Doc facility's including but not limited to G.R.V.C. Mr.Alli had met with "IG" and "ID" regarding the Primary and secondary excessive use's of force And or sexual abuse. Defendants failed to Properly investigate Mr.Alli's Claims and or discipline Or sanction the wrong doing. Defendants acted Knowing with the intent to aid and abett in the long-standing Policy of use of Misconduct. Defendant Inspector general and Investigation Division are sued in there official Capacity.

## FACTUAL ALLEGATIONS

30. The Conduct engaged in by the defendants named herein Was, at all times, subjectively and objectively unreasonable and in

Violation of Mr. Alli's clearly established rights.

31. On or about January 11 2012, Mr Alli became yet another Victim of a "Pattern of brutality" in New York city Jails and a Pattern of brutality against detainee's in unmonitored by cameras Locations within departmental facilitys. Including but not limited to GRVC. Senior officals, Policy making officals/defendants, the City, and other high ranking DOC Officials are aware of and tolerate of Primary and secondary Assaulting officals and other insubordinate employees, whom are Unconsistent with formal Policy. These Practices are so wide spreaded long-standing and deeply embedded they constitute law and unwritten departmental Policy. These Practices are Continuing and "deeply entrenched" in Rikers Island city Jails. SEE. "Alli v. Steward-Bowden 11-CV-4952(PKC)(KNF) challenging the routine use of excessive and unnecessary force in unmonitored areas, and the cover-up tatics including but not limited to, falisifing report and hoaxed disciplinary infractions." SEE. Nunez v. city of New York, NO 11-cv-5845(LTS)(JCF) S.D.N.Y 2012, the sixth and most recent class action Challenging the "Routine and institutionalized Staff Violence against detainee's" in New york city Jails). SEE "Ingles v. Toro, NO. 01-CV-8279 (S.D.N.Y 2006), Requesting system wide relief from excessive use of force in the City Jails". SEE "Sheppard v. Phoenix, No. 91-CV-4148 (S.D.N.Y July 10 1998) Challenging excessive use's of force in city's Jails." SEE. "Jackson v. Monteman NO. 85-CV-2384 (E.D.N.Y Nov. 26 1991), Challenging the same conduct in the Brooklyn houses of detention." SEE. Reynold v. Ward No. 81-V-101 (S.D.N.Y), Challenging excessive and unnecessary force in the bellevue Prison Psychiatic ward", SEE also "Fisher v. Ward, NO. 85-civ-2128 (S.D.N.Y March 28 1990) Challenging the same Conduct in Eric M. Taylor Center, a Rikers Island Jail)". In addition to these Class actions Litigations stated above. The Primary and secondary assaulting officers and Senior DOC supervisors and Uniformed Staff have been repeatedly sued

by inmates alleging beatings by Staff and Doc Sanctioned Cover-ups. Some case of mutiple are reported herein. SEE "Youngblood V. Baldwin, No. 08-CV-5982 (S.D.N.Y July 22 2009), alleging a staff beating at G.R.V.C resuiting in Skull laceration and a broken nose." SEE. "Rice v. New York City Department of Correction, No. 03-CV-582 (S.D.N.Y Aug 26 2004), Alleging the beating of two inmates at GRVC resuiting in a collapsed lung and contusion hematomas, in one case, and neck and spinalcord injuries causing Permanent Stutter, in the other". SEE "Joesph V. City of New Department of Corrections No. 02-CV-9219 (S.D.N.Y May 28 2003) alleging a beat-up at GRVC causing a orbital Fracture." SEE "Reynolds v. City of New York, NO. 11-CV-621 (S.D.N.Y Nov 21 2011)"; Williams v. City of New york, No. 09-CV-5734 (S.D.N.Y Aug 12 2010)"; "LEE v. Perez, NO. 09-CV-3134 (S.D.N.Y March 12 2010)"; "Shuford v. City of New York, No. 09-CV-945 (S.D.N.Y OCT 22 2009)"; "Beivett v. city of New York, No. 09-CV-8090 (S.D.N.Y Nov 18 2010)"; "Mull v. City of New York No. 08-CV-8854 (S.D.N.Y March 22, 2011)"; "Diaz v. city of New york, NO-08-CV-439 (S.D.N.Y March 24 2009)"; "Cugo v. city of New york of New york No. 08-CV-2931 (S.D.N.Y Jan 20 2009)"; "Williams v. City of New york, No. 07-CV-11055 (S.D.N.Y Sept 24 2008)"; SEE Also, Cuadrado v. City of New York No. 07-CV-1447 (S.D.N.Y Dec 26, 2007)"; "Scott v. City of New york, No. 07-CV-3691 (S.D.N.Y Oct 18, 2007)

32. At the times of the Primary and Secondary assault, Plaintiff was an Enhanced restraint category inmate, and a Pre-trail detainee housed in the Punitive Segregation unit of Rikers Island G.R.V.C.

33. Both the enhanced restraint Classification Category and Punitive Segregation units and or Mental Health assesment units for infracted inmates ("MHAU··") are govern by special guidelines and directives. Which exclusively set forth the Procedure of any and all Conduct. Inciuding but not limited to, the transporting of an detainee in or outside the facility, the Opening of a detainee's cell and or any location

14

a detainee is confined within. E.g Shower, Three Point Search Area, Visit cages, and recreational Pin. Before a inmate of such category (Enhance restraints, RED ID, IGRV, or CMC) or a inmate of a Special Placement (Punitive Segregation) is escorted, moved, or released from a closed and or Caged locked area. he must be Properly cuffed and Secured with the applicable Proper mechanical restraints. These directives and or departmental Policy also includes rare expection to open a inmates Confines without being fully Secured in " Proper restraints.

## EVENTS LEADING TO THE JANUARY 11 2012
## USE OF EXCESSIVE FORCE

34. On or about January 11 2012 Mr. Alli was scheduled for a deposition, for a Unrelated matter and litigation, At rikers Island G.R.V.C facility. This deposition was Scheduled for 10 o°clock with the City Law Departments Assistant Corporation Counsel, Lesley MYbaye.

35. The routine established Counsel visit area designated for the meeting with Counsels and or deposition takings was Closed due to maitence of the Counsel visit area of G.R.V.C. Wherefore all Counsel visits where being held at the main visit area. The counsel visiting area is located by the main intake of GRVC. The main Visiting area is located by the Package area of GRVC and is different in Use and Vicinity, in Comparison to the Counsel visiting area of G.R.V.C.

36. The main visit area and its Componets are regularly Closed on both mondays and tuesdays due to there being No Visits "regular visits" in the department on those days.

37. The main visiting area of G.R.V.C is Composed of Six (6) Componets. Which Include (1) Wating area, (2) C.M.C Visiting room, (3) Punitive Segregation / M#Auii Visiting room, (4) General Population Visiting room, (5) Non-contact "Booth Visit" Visiting room, and (6) Inmate Search Area. In the main Visiting area there are Two (2) approved entrances and or departure Areas And One Unapproved Fire Emergency Exit and or entrance. The Waiting area Contains one (1) entrance / departure door. The Search area Contains the Second (2). And the fire Emergency Exit and or entrance is located On the General Population Visiting room. Outside both the Waiting room and Search Area entrances, Cameras are there for recording and monitoring. UPon information and belief there are no cameras on the outside of the fire exit door. YEt there may be Cameras on the general Perviation Visiting room.

38. In the Center of the Six (6) Componets of the main visiting area Of G.R.V.C, there is a "bubble" station which has Clear View Of all Componets of the Main Visiting area. Routinely there are officers whom Area assigned to the Post of Occupying said Bubble and Overseeing each componet Of the visiting area. The officer whom works inside the bubble has Control of the lights and electric doors On the main visiting Area and each Componet.

39. The Counsel Visits were being Conducted in the booth Visit area Of the G.R.V.C Main Visiting area. At the date of the malicious assault there was a Spainsh Officer about 5'9 whom worked in the bubble. Upon information and belief his name Is Lopez and Is One Of the "Primary John Doe assaulters".

40. At approximately 10:00 ʰᵐ Mr. Alli Was escorted to the Main Visiting area, and the entered the booth Visit Section. approximately four of detainee's came to the booth Visit Section for attorney Visits during the hours Mr. Alli Was held there.

Corporation Counsel Ms. Lesly Mybaye was hours late for the scheduled deposition. She didn't arrive until approximately 1:00 PM. That when the deposition began. The deposition was completed about 2:30 PM. At this time the Corporation Counsel lefted, and Mr. Alli was lefted in the booth visit cage awaiting an escort back to his housing area 11B of G.R.V.C MHAUII's Punitive Segregation Unit.

41. Mr. Alli was lefted waiting for a escort for a long duration. Growing impatient he began to shout at the Officer in the bubble "Where is my escort". The Officer in the bubble then turned off all the lights in the main visiting area, leaving Mr. Alli in the dark. Mr. Alli then started to shout "get me out of here I'm hungry" and "Why did you turn off the lights". Soon after Mr. Alli could hear mutiple foot steps that sounded like a large group of officers. Mr. Alli then began suspicious and nervous of the increased activity. Upon information and belief the officer turned off the lights so the Cameras couldn't view the large abundance of officers entering through the fire exit door or civilian enterance upon to the general population visiting room, and then hide within the stalls of the waiting area. After the finishing of the sound of scuffing feet the door opened for the booth visit area, and officers Pedlar, Bravo, Spears, Almazar, and Captain Beharri, and a John Doe officer.

42. As the appoarching officers came to the booth visit cage Alli was confined in, Officers then proceeded to place restraints on Mr. Alli. First they placed the waist restraint belt on Mr. Alli then cuff's and shackles.

THE ASSAULT OF JANUARY 11 2012
AND SEXUAL ABUSE

43. After being placed in restraints, Mr. Alli was then escorted from the booth visit area to the waiting area for an alleged departure. When entering the waiting area it was extremely dark. As Mr. Alli was being escorted Officer Pedlar stirred him to face the wall. Once Alli looked over his shoulder to see why his was redirected, Officer Pedlar issued a close fist to Mr. Alli's facial area. With caused extreme pain and knocked Alli to the floor.

44. Once Mr. Alli was knocked to the floor mutiple officers approximately twelve (12) or more came from hidding within the stalls of the waiting area. As Mr. Alli was on the floor Officers Pedlar, Officer Span, Officer Bravo, Officer Almazar, The John Doe officer whom was assigned to work the visiting room/area and or bubble, Captain Beharri, and the other primary assaulting officers (whom some of most was identified by the inspector general or Investigation Division identified) began to kick, stomp, and toss Mr. Alli around the visiting area. Each stated officer took turns punching, kicking, and stomping Mr. Alli while he was cuffed. While Mr. Alli was being assaulted officers issued death treats and other demeaning words. During the assault, Mr. Alli was sexual assaulted

45. After several minutes of the malicious assault that was not warranted nor was there any penological interest for the excessive force. Captain Beharri called for a respondance team. When the respondance team arrived Officer Rohr and other John doe officers came to continue and punch and stomp Mr. Alli. In the waiting area of the main visiting area there are big carts that are metal and hard plastic. Defendants stated above continuously slammed said cart on his bodзj frame.

46. After the assault Mr. Alli was forced to his feet, yet he couldn't adequately walk due to the spine and back damage.

47

Mr. Alli had Spleen, spine, and back damage. That disabled him from walking. The stated primary assaulting defendants intentionally and willfully refused to call medical for a stretcher. Wherefore defendants dragged Alli upward to the main clinic.

48. Due to the severity of Mr. Alli's injuries, When seen by medical Personnel he was referred to East Elmhurst Hospital.

49. At East Elmhurst Hospital Mr. Alli was particially treated and or seen for mutiple injuries. SEE East Elmhurst medical records for full list of injuries. Despite the Pain and Suffering Mr. Alli endured adequate medication was not Prescribed, Nor was a Mri Test Scheduled for the detection of all injuries to Mr. Alli's Back. After the assault Mr. Alli was urinating blood for days. Without follow-up inspection.

## MR. ALLI WAS DENIED APPROPRIATE MEDICAL ATTENTION

50. The Board of Corrections Minimum Health Care Standards ("MHCS") require that inmates receive Prompt Medical Care and explicity Prohibit delay, denial and interference with an inmate's access to medical treatment. Inmates in need of emergency services are to be granted access to such services Promply. In addition, such Services are to be Provided Competently and "at a level Consistent with legal requirements" accepted by Professional Standards and Sound Professional Judgment and Practice. (Minimum Standards § 3-01(A)) The Care Mr. Alli received immediately after the incident and in the several weeks and or months that followed fell grossly below this standard

51. After the assault Mr. Alli mainly suffered, was denied and or didn't receive Pain medication for his extreme Pain and discomfort.

In addition, despite being in extreme Pain, the examing doctor, facility Sick call nurse's/doctors, Whom were employed by defendant Correction health Service/Prison health Service, and routinely toured Mr. Alli's housing area. Or the doctors Whom duty was to review Mr Alli's medical records and or hospital reports failed to follow Prior recommendation's, Prescribe, Adequate medication and or schedule follow-up appointments.

77. Had the subordinates of defendant Correctional health Services/Prison Health Services. Issued a Proper exam, treatment and follow up care, as required under MHCS, Civil rights, Correction law, and Whichever Other applicable law, Mr. Alli's Pain and suffering and Permanent injuries he sustained Would surely have been minimized Or treated before they wrostened.

## DEFENDANTS DEMONSTRATED DELIBERATE INDIFFERENCE TO MR. ALLI'S NEED FOR MEDICAL CARE

78. In the months Following the Primary and Secondary assault. Mr. Alli Was denied access to necessary medical treatment Causing him to Suffer Permanent Physical injury or extreme Pain Proximately related to the attack.

79. During his Confinement in disciplinary Segregation Mr. Alli made daily request to increase Pain medication, receive MRI testing, Physical therapy, and to be seen by sick Call Personnel. All of Which was ignored, delayed, or interrupted. Mr. Alli Continuously made daily request for medical Care to the Personnel of Prison health Services/Correction health Services, Verbally and in Written. As Well as to Captain Behari and Other others whom do or did frequent tours of Mr. Alli's Confined housing area.

80. Mr. Alli Also Wrote Rose argo, Kathleen muvley, Prison rights Project, Board of Corrections, Department of Corrections, and Prisoner Health Service Correctional health Services. Said defendants Were responsible for the discipline

supervision, monitoring and training, and or Providing or directing medical treat~
be Provided. But failed to other or otherwise facilitate Mr. Alli's access to medical
treatment.

81. Upon information and belief, defendants John doe's 1 through 6 Boc's
feild representatives Canvased G.R.V.C during January 11 2012 and months afte~
said date yet failed to document, report, investigate, remedy or otherwise
facilitate or intervene in Protection Of Mr. Alli's Constitutional rights.

82. The Joint and Conspirational action of defendants stated herein Constituted
deliberate indifference to a substantial risk Posed to Mr. Alli's health and safe~
Said actions fell short of DOC and BOC directives, Policies and Standards.

83. Mr Alli also submitted medical Complaints to the Policy-making defendant~
Most of which were not answered or remedied.

84. In attempt to cover-up the Unwarranted and malicious assault And
Sexual abuse Of January 11 2014 defendants infracted Plaintiff for falsified
disciplinary Offenses.

## THE INFRACTION / INFRACTION HEARING ARISING FROM THE JANUARY 11 2012 INCIDENT, AND THE CORRESPONDING COVER-UP / CORRESPONDING DUE PROCESS VIOLATIONS

85. The assaulting officers Infracted Plaintiff for disciplinary
Offenses Purportedly arising Out of his Behavior alleged during the
assault ("The Infraction")

86. The infraction was Of the series of events intended to Cover-up
the wrong acts, namely the assault and Sexual abuse On Mr. Alli.

87. The infraction, as required Under Doc Policy, triggered an investigation, By
John Doe investigating Captain 1. Yet this investigation was, however, ▮▮▮▮▮

21

laced with inefficiencies, bias and due Process Violation.

88. In addition the John Doe investigating captain 1 did not initiate the investigati
within 24 hours of the alleged offenses, failed to review Mr. Alli's excessive
force allegations, failed review video of the area or surrounding incident areas
failed to obtain a statement from all participants and or locate all participants and
or witness, and failed to seek mental health Clearance Prior to the conducting
of investigation.

89. The hearing for the infraction further Perpetuated the Cover-up.

90. The John Doe Adjudication Captain 1, Violated Plaintiff's Fifth, Eight,
and fourteenth Amendment of the constitution. As well as DOC's and BOC's
Minimum Standard, Due Process of law, correction law, and the rules and
laws of both DOC/BOC including but not limited to directive 6500 R-B

91. John DOE Adjudication Captain 1 acted with deliberate indifference
Violating all rights and laws Stated herein by not following the rules
Policys And directive Positioned is governed by. Defendant willingly,
Knowingly and intentionally Violated due Process rights and DOC/BOC directive
by; Denying witness, Concluding outside information, allowing inconsistent
Statements without question. And declined to question assaulting officers
regarding inconsistencies and Omissions in their reports. Defendant failed
to review and or facilitate the Preservation of video capturing the areas
Surrounding of the assault. Despite being told that there were mutiple
Officers whom assaulted the plaintiff, that failed to give reports or witness
Statements. Said denial was used soley with the intent to Cover the
identity of the John doe assaulting officers.


## INSPECTOR GENERAL/INVESTIGATION DIVISION

92. REGARDING, the January 11 2012 USE of force the inspector General and or Investigation Division met with Mr. Alli for a interview regarding his allegations of sexual abuse and the Primary and Secondary assault. Mr. Alli gave complete events of the incidents. Although they knew of all the circumstances regarding alli's claims. The inspector General and or Investigation Division failed to adequately investigate and determine all of the John doe Primary assaulting officers. Defendants failed to review the video footage collaberating with Alli's claims. Defendants failed to sanction, discipline, and failed to make recommendations to cease the malicious conduct and or sanction wrong-doings. The Investigation Division and Inspector General aided and abetted in the continuance of the deeply embedded unwritten yet consituting law of using excessive force and cover-up tatics.

## RETAILIATION CLAIMS

93. After the Primary assault, Plaintiff was returned to Rikers Island G.R.V.C upon departure of East Elmhurst Hospital. Plaintiff housing area was changed from 11a of G.R.V.C's MHAUii to 13B of G.R.V.C's MHAUii. Plaintiff was placed in 13 cell of 13B Housing area. for day after the incident Plaintiff could barely move or walk. The cell Plaintiff was placed in did not have any tolied use.

94. Mr. Alli wrote numerous complaints and grievance's to the grievances clerk/supervisor, Rose Agro, Kathleen Muviey, Prisoners rights Project, Board of Corrections, and verbally to Captains, deputy's and housing area officers. Work Orders

23

Were allegely submitted to fix Plaintiff's toliet, Yet no corrective actions were successfully taken.

## SECONDARY USE OF FORCE
### AND SEXUAL ABUSE

95. On or about February of 2012 a cell Search's was being conducted of the housing area 13B. When officers approached Alli's cell they threatend to harm and sexually assault him for Prier Conduct. Due to said allegation and current Physical Condition of Plaintiff, he refused to comply with the search if it was conducted by the same officers whom made said allegations.

96. Mr. Alli pleaded to the John Doe Captain that facilitated the Search, expressing that he was not refusing the search. He just wanted a change of officers to search him for safety and security. Yet said John Doe Captain refused maliciously Plaintiff's request with the intent to aid and abett in the Proceeding Conduct.

97. Subsequently a Chaplin came to Alli's cell stating that he was going to be subjected to a cell extraction. Mr. Alli also expressed to the Chaplin that he was not refusing the search just requesting a change of searching officers due to stated threats and prior misconduct. The Chaplin lefted and returned stating the officers stated they do not neogiate with terrorist.

98. Wherefore after mr Alli was subjected to a cell extraction by officers Wong, Fluker, Button, John Doe officers, and a John Doe Captain.

99. During the cell extractions mr. Alli had a finger or object forcefully inserted up his rectum by officer button and or officer wong while Officer Fluker, button, Wong and a John Doe assaulting secondary officer Punched, kneed, and forcelly twisted Plaintiff's hands and or wrist while he was on the ground. The John Doe Probe team Captain took no

24.

measures to cease or prevent the actions Plaintiff endured. Said John Doe Captain of the Probe team had a reasonable opportunity to prevent said incident from occuring yet aided and abetted in the underlying conduct

## HEARING FOR TICKET/Infraction
### AND Infraction Cover-up tatics
### AND DUE Process Violations.

100. After the sexaddy assault a Infraction was written by assaulting officers with the intent to cover the incident. The infraction, as required under DOC triggered an investigation, by the John Doe Adjudication Captain 2. This investigation was, however, laced with inefficiencies bias and due Process violation. The Adjudication Captain 2 and The John Doe investigating Captain 2, Both failed to Obtain material statements from material witnesses failed to obtain status or seek Mental health Clearance Prior to the infraction and investigation Or hearing for said infraction.

101. The John Doe Adjudication Captain 2 and John Doe investigation Captain, both failed to review the infraction for due Process violations, aided in due Process Violations, and failed to investigate and failed to report Mr. Alli's allegations of sexual abuse and excessive force.

102. The Adjudication Captain 2, declined to question the secondary assaulting officers regarding inconsistencies and omissions of the Sexual assault and excessive force. He similary failed to review and or faciliate the Preservation of video evidence capturing the assault, and denied Mr. Alli the opportunity to call and examine witnesses during the hearing.

25.

## LOST OF LIBERTY DURING
## PUNITIVE SEGREGATION SANCTIONS

103. As a result of Adjudication Captains 1 and 2 "John Doe", John Doe investigation Captains 1 and 2, And as well as the John Doe Primary and Secondary assaulting Officer whom forged the disciplinary infraction. Mr. Alli received a disposition of guilt in regards to both infractions. The confinement Mr. Alli received is wrongful and not supported by Doc/Boc directives/Policy, or due Process. This wrongful Sanctions and Confinement Could have been avoided if the Adjudication captains followed the rules and Policy's governing the Proceeding.

104. The wrongful confinements Could have been Avoided if the City and Policy making Defendants would have Properly supervised, trained and or disciplined the defendants herein. The higher ups, the City and the Policy making Officials knew of or should've knew of the Adjudications captains 1 and 2, extensive history of Violating inmates rights during disciplinary hearings. Policy-making defendants knew of the John Doe Adjudication Captains 1 and 2, being insubordinate Yet failed to re-train or remove from position.

105. Plaintiff Umar Alli, a Pre-trail detainee had a liberty interest to avoid Punitive segregation and deprivations of Normal Prison life. During stated wrongful confinement, Mr. Alli was subjected to the continuous of Ordinary Prison life deprivations. These actions resulted into loss of liberty, loss of amenity and mental/emotional distress.

106. Plaintiff was confined for 23 hours a day in a very small square Cell equiped with a toilet directly next to the cell door window. No Privacy was available for toilet Use.

26

107. Plaintiff was deprived of most of his Personal Property for examples, Supportive footwear, books, magazines, Personal Clothing, watches, cosmetics, stamps, envelopes, Personal Pictures, religious items and Canteen comminsary, and as well as the ability to work, attend educational and vocational Programs, and to watch television, associate with other detainee's, attend Outdoor or indoor recreation in a Congregational setting with the ability to engage in sports and other congregate activities. Plaintiff was deprived the ability to attend Congregational meals and forced to eat food that was often cold and well under mandated Portions.

108. During any court appearances Plaintiff was hand cuffed and schakled without removal for the minimal of eight hours, and forced to appear in front of the Judge and relatives in Punitive Segregation Clothing and in restraints.

109. Plaintiff was often denied the ability to shower, yet only one Shower was given a day in a shower cage that was clearly visiable, with no shower curtain.

110. MR. Alli was denied and or effected with Conducting legal research due to the limited law library access. Plaintiff was not allowed to Physically attend the law library. Plaintiff was forced to submit his law library request on a Piece of Paper, which Often went uncollected and or answered.

111. Plaintiff was also subjected to One (1), six (6) minute Phone Call daily, in which some days he wasn't able to Contact his family friends and attorneys.

112. The above stated consituted atypical and significant hardship, loss of liberty and deprivation of Ordinary Prison life.

27

## DEFENDANTS HEREIN CONDUCT EGREGIOUSLY VIOLATED DOC AND BOC POLICIES AND DIRECTIVES

### A. USE OF FORCE DIRECTIVE

113. The Department has implemented Use of force Directive No. 5006R. Under this directive, force is to be used only after all reasonable efforts to resolve a situation have failed.

114. Correction officer and DOC staff are permitted to use force commensurate to the level of treat posed by the inmate at that time this directive prohibits use of force as a means to punish, when an inmate poses no threat, or when an inmate is not resisting staff. This directive mandates that "Blows should not be struck if Control holds grasping" or other less harmful methods "would be adequate to restrain the inmate"

### B. HEALTH CARE MINIMUM STANDARDS

115. THE BOC has established minimum standards pertaining to inmate access to medical care.

116. Medical care within DOC facilities is to be maintained "at a level Consistent with legal requirements, accepted professional standards and sound professional Judgment and practice". These standards contemplate (i) the provision of prompt medical treatment and follow-up care as well as emergency services; (ii) the regular training and development of health Care personnel and correctional staff as appropriate to their role in the health Care delivery system; and (iii) an ongoing review and assessment of the quality of care provided to inmates.

117. In addition, these standards expressly prohibit DOC staff, officers, and personnel from delaying, denying or otherwise interfering with an inmates access to medical attention.

118. DOC officers with knowledge of an inmate's need for medical care are to report such need promptly. In addition, all decisions regarding medical attention are to be made by health care personnel only and sick calls are to be available to inmates every day within 24 hours of a request for care. To the extent appropriate treatment for an inmate injuries is not available within the correctional facility, these standards mandate that specialty services be provided to inmates in the time frames specified by referring medical personnel.

## C. DUE PROCESS DIRECTIVE

119. The Department has implemented Inmate Disciplinary Due Process Directive No. 6500 R-B. This Directive requires that DOC enforce its rules and regulations "fairly and in accordance with due process requirements" and set forth the process for investigating disciplinary misconduct in DOC facilities. The investigation process begins with a report and notice of infraction ("RNI") to be prepared whenever "an employee reasonably believes an inmate has violated an institutional rule. The RNI is to be legible, detailed, and specific regarding the time and place of the rule violation and shall include the description of the inmate's actions and behavior."

120. The investigation is to be conducted by a supervising officer who neither participated in or witnessed the subject-incident and is to commence within 24 hours of the incident.

29

121. Directive 6500 R-B instructs that an infraction be dismissed for due Process violations, including but not limited to, failure to commence the investigation within 24 hours, as well as the inclusion of contradictory, incorrect and/or inconsistent allegations. This directive requires that use of force allegations by the infracted inmate be reported and that all relevant evidence be reviewed by Adjudication Captain who is then instructed to make a determination as to "why and where injuries were inflicted on the inmate (EMPHASIS ADDED). This directive further requires that any allegation by the infracted inmate of "Abuse of Authority, Malfeasance or Corruption on the Part of DOC Personnel... be reported in writing directly to the inspector General's office (EMPHASIS ADDED)

122. After a complete reviewing of the Directive 6500 R-B and disciplinary hearing transcript and supporting reports it is undisputed that Plaintiff rights were violated in accordance to stated directive and federal clause of due Process.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

123. Pursuant to Directive No. 3376, Inmate allegations of Physical assault are not subject to the inmate Grievance and request. Nonetheless, Mr. Alli has exhausted administrative remedies with respects to all claims raised herein

124. In addition, multiple complaints documenting the conduct at issue herein were made to Defendants Agro, Armstead, Finkle, Finkelman, Mulvey, Schriro, Simmons and Wolf, both by Mr. Alli and the legal Aid Society acting on his behalf.

30

125. In any event, Plaintiff's efforts to strictly comply with grievance procedures were inhibited by the conduct of DOC Staff. Despite numerous request for the relevant grievance directive, DOC Staff refused to provide them to Mr. Alli.

126. Upon information and belief, DOC Staff has, on more than one occasion, confiscated copies of the grievance directives found in the possession of inmates.

127. Due to the complexity of the grievance process, Mr. Alli required assistance to fully understand the process required for administrative exhaustion. However, DOC staff were unable and or willing to explain the necessary step of exhaustion.

128. In addition, the MHAUII area in which Plaintiff was confined was not equipped with a grievance box, nor did Grievance officers regularly canvas the MHAUII unit. Thus, any failure by Mr. Alli to exhaust administrative remedies should be excused.

129. Lastly Plaintiff appealed both disciplinary decisions and then fried Article 78 Petition.

## MR. ALLI'S INJURIES

130. As a direct and proximate result of the unlawful actions taken by the defendants named-herein, Plaintiff has suffered harm, in the form of, inter alia, Mental anguish, humiliation, emotional distress, Permanet and non-Permanent physical injury, including but not limited to spine damage, spleen damage, testicle damage, kidney damage, Blood to urine, abrasions, lacerations, and contusions. See full medical reports.

# CLAIM FOR RELIEF

131. Plaintiff repeats and realleges the foregoing Paragraphs as if the same was fully set forth herein.

132. As stated Priorly Mr. Alli was subjected to malicious assault and Sexual abuse. Doc officials and Policy making defendants have a long standing Practice and deeply embedded unwritten Policy of doing so. Further more Mr. Alli was faced with due process violations and Wrongful confinement. Thus resulting into deprived due process clause of the Constitution, loss of liberty, excessive force of the fourteenth and eight and fifth amendment of the Constitution, Cruel and Unusual Punishment and atypical and Significant hardship.

133. The supervisory and individual Correction officers defendants acted under Pretense of color of State law and in their Official and individual Capacity, within and outside of their employment these defendants acted willfully, Knowingly, and with the intent to deprive Plaintiff of his Constitutional rights secured by 42. U.S.C §§ 1983 and the fourteenth, fifth, and eighth amendment of the united States Constitution.

134. The supervisory and Policy making defendants and City of New York knew of or should have known that a long standing Pattern of; excessive force and Sexual abuse in un monitored areas and in Punitive segregation units (including MHAUII), due Process deprivations, unfair and just hearing Proceedings, and Wrongful unsupported by due Process and directive 6500-RB disciplinary Confinement Sanctions were being imposed On detainees. Said Practices existed in the City Jails Prior to, and during the times relevant hereto.

135. The City, Policy making defendants, and supervisory defendants failure to take measures to curb these patterns constitute acquiescence in the known unlawful behavior of subordinates. The prevalence of these practices and general knowledge of their existence. Combined with the failure to take remedial action despite the fact these issues have been persistently brought to their attention constitutes deliberate indifference. Deliberate indifference to the safety and rights of detainees in there care custody and control. The defendants herin conduct had been a substantial factor in continuous of such violations and proximate cause of the constitutional violations alleged herein.

136. By premitting tolerating and sanctioning a persistent widespread policy, practice and custom pursuant to which plaintiff was subjected to cruel and unusual punishment, loss of amenity, loss of liberty, physical harm, and mental and emotional injuries.

## FIRST CLAIM: FOR EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS

## COUNT I:

Against Assaulting Primary and Secondary Officers for Sexual abuse and use of excessive force pursuant to §§ 1983, and 18 U.S.C 241

137. Plaintiff repeats and re-alleges and incorporates by reference the paragraphs above as if fully set forth herein with the same force.

138. The primary and secondary assaulting officers willfully violated Mr. Alli's constitutional rights by subjecting him sexual abuse and excessive force for no legitimate non-punitive penological purpose.

33

139. These defendants acted in clear violation of Mr. Alli's clearly established rights and well-settled legal principles, of which a reasonable person should have been aware, and are not to be entitled to a good faith or qualified immunity defense. As a proximate result, Mr. Alli suffered severe and permanent injuries.

140. Defendants' conduct demonstrated deliberate indifference to the substantial risk such excessive use of force and sexual abuse posed to Mr. Alli's health and safety. Mr. Alli is entitled to damages for this conduct, and defendants should be fined and imprisoned.

## COUNT II

Against Defendants - John Doe 1-6 field representive, Correctional Health Services / Prison Health Services, Rose agro, Kathleen Muvley Hildy J Simmons, Dora Schriro, and Captain Beharri for Deliberate indifference to Medical Needs Pursuant to § 1983

141. Above stated defendants were on notice of Mr. Alli's medical needs by verbal request, written request, or review of medical reports and or sustain injurys proximately relating to both the primary and secondary use's of force. Despite Mr. Alli's numerous complaints to each of the stated defendants, defendants delayed, denied, postponed, or other wise interfered with Mr. Alli access to medical care for no legitimate penological purpose. Defendants acted in clear violation of well-settled law, of which a reasonable person should have been aware, and are not entitled to a good faith or qualified immunity defense.

142. By their conduct, these defendants demonstrated deliberate indifference to the substantial risk posed to Mr. Alli's health and safety as a result to injuri Mr. Alli is entitled to damages for this conduct

## COUNT III

Against Defendants John Doe Adjudication Captains 1 and 2, and John Doe investigation Captain 1 and 2. for violation of Due Process Pursuant to § 1983

143. Plaintiff repeates, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein.

144. Pre-trail detainees are entitled to certain Procedural Protections Wheneve further loss of liberty Can result from disciplinary action.

145.  Under the fourteenth Amendment, an inmate is entitled to (i) Advance notice of the charges against him; (ii) A hearing affording him a reasonable opportunity to call witnesses and Present documentary evidence; and (iii) A fair and impartial hearing officer, amongst other things.

146. This standard is implemented and supplemented by DOC Directive 6500 B-B, which establishes the Procedure for Processing Pre-hearing detention and inmates disciplinary infractions.

147. Defendants Adjudication captains 1-2 Violated Doc due Process Procedures as well as Mr. Alli's Constitutional rights by, amongst other things:

(i) failing to dismiss the infraction on due Process grounds given that the investigation was not initiated within 24 hours of the incident;

(ii) failing to call witnesses with knowledge of the incident;

(iii) failing to Cerdit Mr. Alli's account of the incident;

(iv) failing to take, review and Preserve crucial evidence, including

35

witness accounts, videotapes, medical records and Physical evidence;

(v) turning a blind eye to inconsistencies in material facts stated in the investigative and officer's reports;

(vi) relying on facts outside of the evidentiary records;

(vii) Confining Plaintiff to disciplinary segregation

(viii) failing to Consider Plaintiff's mental health Status during the hearing.

148. The John Doe investigation Captains 1-2 violated DOC due Process Directives and Mr. Alli's Constitutional rights by, amongst other things,

(i) failure to Conduct an investigation within 24 hours of the incident,

(ii) failure to Commence an investigation within 24 hours of incident and or to interview witness with knowledge of the incident,

(iii) Conducting a biased investigation; and;

(iv) aiding and abetting in the cover-up methods not to reveal the incide

149. Defendants Adjudication Captain John Doe 1-2 and investigation Captains John Doe 1-2, acted in Clear violation of well-settled law of which a reasonable Person should have been aware, and are not entitled to a good faith or qualified immunity defense.

150. These deficiencies led to Mr. Alli's disciplinary Confinement and loss of liberty without due Process of law in violation of Mr. Alli's Clearly established rights. Mr. Alli is entitled to damages for this Conduct

## COUNT IV:

Against City of New York and Policy-Making Defendants For Due Process violations Pursuant to §§ 1983

151. Plaintiff repeates, and re-alleges and incorporates by reference the paragraphs above as if fully set forth herein with the same force and effect.

152. The City and Policy-making defendants have, for some time, been on actual notice of the inadequacy of hearings offered to inmates within the GRVC and other DOC facilities.

153. Former and current lawsuits made plain that hearings and investigation officers frequently fail to credit inmates accounts, fail to take, review and preserve crucial evidence including witness accounts, videotapes, medical records and physical evidence, and plain outright deny due process and fail to adhere to Directive 6500 B.

154. Stated defendants' failure to take measure to correct these behaviors created an enviroment where subordinates were and continue to be able to commit due process and other violations with immunity. Such failure to act constituted deliberate indifference to the rampant due process violations within DOC facilities, in connection with the administration of inmates infractions and disciplinary procedures.

155. In many case, and herein Policy-making defendants affirmed hearing determinations. In doing so these defendants in addition also directly participated in the liberty deprivations imposed. Violating clearly established rights. Defendants are in clear violation of well-settled law of which a reasonable person should have been aware, and are not entitled to a good faith or qualified immunity defense.

156. MR. Alli is entitled to damages for this conduct.


## COUNT V:
Municipal and Supervisory liability Pursuant to §§ 1983 for all Claims.

37.

157. Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully stated herein with the same force and effects.

158. Supervisory defendants, Policy-making defendants, and the City of New York are municipal agents "whose acts may be fairly said to be those of the municipality."

159. These defendants failed to intervene to protect Plaintiff's Constitutional rights from infringement, were grossly negligent in supervising subordinates who committed the wrongful acts, and or aided and abetted and or conspired to deprive. Participated in depriving, and or did deprive Plaintiff of Certain Constitutionally protect rights including, but not limited to:

(i) the right to not be subjected to sexual abuse and or excessive force

(ii) the right to a fair investigation and non-biased disciplinary hearing in connection with disciplinary infractions and offenses;

(iii) the right to medical care commensurate to BOC Health Care Minimum Standard and the United States Constitution; and

(iv) the right to conditions of confinement commensurate to BOC Minimum Standards and the United States Constitution;

(v) the right to complain about and/or grieve all matters involving the misconduct of DOC uniformed officers and officials.

160. Defendants knew or should have known that their employees, agents, and subordinates had the propensity to engage in the illegal and wrongful acts described herein.

161. Indeed upon information and belief the primary and secondary assaulting officers, have all been implicated in excessive force and or sexual abuse incident involving inmates. In GRVC and other facility'

162. In addition, the City and Policy-making defendants have been aware for years (from lawsuits, notices of claim, Article 78's, Press reports, internal investigations, and complaints from inmates, their family members, friends, and legal aid society) that their employees subordinates and agents routinely engage in incidents of excessive force and or sexual abuse followed by concerted efforts to cover up wrongdoing.

163. The City, Policy-making Defendants, and Supervisory defendants created, fostered, perpetuated and promoted unconstitutional customs, practices and policies by, amongst other thing:

(i) failing to protect and supervise detainee within the care custody and control of the DOC

(ii) failing to equip unmonitored areas, with cameras and or other devices to reduce the incidence of physical assault on inmates;

(iii) failing to implement and develop policies and procedures sufficient to safe-guard the health, safety and welfare of detainees within the care custody and control of the DOC;

(iv) failing to enforce existing rules designed to safeguard the health, safety and welfare of detainees within the care, custody and control of the DOC;

(v) failing to discipline and or prosecute correction officers for employing excessive force against detainees in their care, custody, and control or engaging in other misconduct under color of state law;

(vi) failing to train and instruct subordinate employees regarding the inmate grievance process and the protections guaranteed to all inmates and detainees subject to disciplinary infractions and or hearings

(vii) failing to monitor the conduct of subordinate employees to determine whether DOC directives and official polices were being compli[ed] with; and

164. These defendants acted in clear violation of well-settled law of which a reasonable person should have been aware of and are not entitled to a goodfaith defense or qualified immunity. These failures and deprivations facilitated, promoted and exacerbated the unconstitutional practices which proximately caused the injuries alleged herein and violated Plaintiff's cleary established rights.

165. Mr. Alli is entitled to damages for this conduct.

## Additional Claims

166. Plaintiff repeats, re-alleges and incorporates by reference the above as if fully stated herein with the same force and effect. Plaintiff in addition also asserts the following Claims;

(i) Claim for First Amendment violations, against Primary and Secondary officers for unlaw Retaliation Pursuant § 1983

(ii) Claim for Assault and Battery against Primary and Secondary Assaulting

(iii) Claim for Negligence against all defendants

(iv) Claim for Negligent Hiring and Supervision against Policy-making defendants and the City

(v) Claim for conspiracy against all defendants

(vi) Claim for Aiding and Abetting against all defendants

(vii) Claim for vicarious liability under respondeat superior against City and Policy-making Defendants

167 All defendants acted under color of state law and violated the provisions above intentional, willful and tortious.

168. Mr. Alli is entitled to damages for this conduct.

40

## Prayer for Relief

Wherefore, Mr. Alli request that the court grant the following relief jointy and individually against all defendants, as follows:

(i) Plaintiff Seeks Compensatory damages for each claim, count, or violated right stated herein against all defendants Jointly and individual

(ii) Plaintiff Seeks Punitive damages against all defendants except The city of New York for each claim, count, or violated right Jointly and individually.

(iii) Plaintiff Seeks to invoke Title 18 U.S.C Section 241 against the Primary and Secondary assaulting officers. for the Public discipline and Sanctioning of assaulting officers of imprisonment. And an awarded Ten dollars, Ten Thousand dollars Sepearately against each assaulting officer individually.

(iv) Plaintiff Seeks an sepearately awarded sum of Two Thousand Dollars a day for each day wrongly confined in Punitive Segregation

(v) Plaintiff Seeks the cost and disbursements of this action.

(vi) Award of Pre- and Post-Judgment interest, as Permitted by law

(vii) Granting such other and further relief as this court deems Just and Proper.

Amounts further to be determined at trail.

And Or a total request of Ten Million Dollars.

Dated. DECEMBER 16 2014
Comstock NEW YORK 12821

By: ⎯⎯

Umar Alli 12 A 1086
G.M.C.F Box 51, 11739 ST Route 2
Comstock NY 12821

41

AFFIRMATION OF SERVICE

COUNTY OF WASHINGTON .)                                    CC
STATE OF NEW YORK .)


I Umar Alli affirms under Penalty of Perjury that ;
On this 16th Day of December 2014, I have through the
facility mail Room of Great Meadow Correctional facility, 11739 STATE ROUTE:
Box 51, Comstock New York 12821-0051. Mailed by Certified Mail
receipt Article Number 7013 2630 0001 7443 9219. A Newly
drafted Complaint, forty-one (41) Pages. THE filing fee for the
newly drafted Complaint is mailed seaperately on this
16th Day of December 2014 by Certified Mail Receipt Article
# 7013 2630 0001 7443 8823.


Dated December 16 2014
     Comstock NY 12821

                              Respectfully

                              Umar Alli 12A1086
                              Great MEADOW CORRECTIONAl FACIliTY
                              11739 STATE ROUTE 22, Box 51
                              Comstock NY 12821-0051

Sworn to BEFORE ME ON THIS
16 Day of December 2014

NOTARY PUBLIC

SHIRLEY C WILLIAMS
Notary Public, State of New York
No. 01WI6304655
Qualified in Saratoga County
Commission Expires June 05 2016