RECEIVED
SDNY PRO SE OFFICE
2015 SEP 23  PM 3: 08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

      UMAR ALLI
            PLAINTIFF,

       V.

OFFICER PEDLAR
OFFICER BRAVO
OFFICER ALMAZAR
OFFICER BUNTON
OFFICER SPEARZ
OFFICER RHOR
OFFICER FLUKER
OFFICER WONG
CAPTAIN BEHARI
CITY OF NEW YORK
ROSE AGRO
KATHLEEN MULVEY
HILDY J. SIMMONS
DORA SCHRIRO
FLORENCE FINKIE
LEWIS FINKEIMAN
MICHAEL J. REGAN
CATHY POTLER
RICHARD T. WOLF
KENNITH T. ARMSTEAD
CAPTAIN GATES
CAPTAIN MEDINA
CHIEF MURPHY

CIVIL RIGHTS ACT

42 U.S.C § 1983

18 U.S.C § 241

18 U.S.C § 242

FIRST AMENDED COMPLAINT

JURY TRIAL DEMANDED

14 CIV. 10257
(RA) (JLM)

( 1 )

Captain Carter  # 1086

OFFICER Kouroukiis # 4988

OFFICER SANCHEZ # 18617

OFFICER SPIRIS # 18445

Officer LOPEZ

OFFICER DIAZ

OFFICER  Stokes

Captain STEWARD-BOWDEN #1225

OFFICER VILLETTE

"ADW" Brian Sullivan  #65

"ADW" Collins  #126

"ADW"  LEWIS

"ADW" Bennett -

OFFICER HARRIS # 15449

OFFICER ETRELLA # 10631

"ADW" Kenneth Stukes  # 1029

William Jerome #15952

WARDEN  Edmund DUFFY

Investigator Daggett -Terenzi

Investigator Arnold # 2105

Investigator I. Martinez #136

Investigator Garcia

JOHN DOE DEPUTY DIRECTOR INVESTIGATIONS

JOHN DOE ASSISTANT COMMISSIONER OF INVESTIGATION

JOHN DOE "6" BOC's FIELD REPRESENTATIVES

JOHN DOE VISITING ROOM/AREA OFFICERS

JOHN DOE DEPUTY CHIEF OF DEPARTMENT

JOHN DOE ADJUDICATION CAPTAIN OF JANUARY INFRACTION (1)

( 2 )

JOHN DOE ADJUDICATION CAPTAIN OF FEBRUARY INFRACTION (2)

JOHN DOE OFFICERS OF JANUARY USE OF FORCE

DEVORAH J. Nazarian "MD"

Physician Abdelnur, "MD"

Pravin RAJAN "MD"

JOHN DOE DEPUTY COMMISSIONER FOR INVESTIGATIONS & Trails

DEFENDANTS

Pro Se Plaintiff, Umar Ali, Hereby alleges as follows;

1. This is a civil rights action in which Pro se Plaintiff Seeks to vindicate rights Secured by the United States Constitution. 42 U.S.C §1983, 18 U.S.C 241-242. The first Fifth, Eighth and Fourteenth Amendment of the United States Constitution. The laws and rights Secured by New York State and Correction law.

2. This action arises from a series of events beginning on Or about January 11th 2012. When Plaintiff Was maliciously assaulted by named and John Doe defendants. Collectively Know as "Primary assaulting Officers". The "Primary assault" or "Primary Incident" as herein referenced took place at Rikers Island ("Rikers") facility George R. Vienro Center ("G.R.V.C")

3. Subsequently in retailiation Umar Ali ("Plaintiff" Or "Ali") Was on or about February 23rd 2012, Subjected to Sexual assault, rape and the Unwarranted Use of force. Herein referenced to as ("Sexual abuse" or "Secondary assault") by the named and John Doe defendants. Collectively know as ("Secondary ossaulting Officers")

4. Lastly Ali was deprived medical care and or treatment. Ali was subjected to Cruel & unusual Punisment, excessive Use's of force, and denial of life necessities.

5. At most times relevant here forth Plaintiff Was a Pre-Trial detainee.

( 3 )

6. To conceal the unwarranted malicious Primary assault, Secondary assault / Sexual abuse, And Practices described herein. Defendants including but not limited to the, Chief Murphy, Rose Agro, Kathleen Mulvey, Hildy J. Simmons, Captin GATES, Captain Medina, City of New York, John Doe Physicians, John Doe Adjudications Captains, John Doe investigation captains, Primary and Secondary assaulting officers, and John Doe Supervising wardens Conspired to falsify reports and or "Sweep the incident under the rug". And or hide the identy of the Participants Of the Primary assaulting officers. Also amongst other things Lodge mutiple disciplinary infractions against Mr. Alli for a number of falsified Offenses.

7. While a hearing was held for the Primary assaut infraction ("infraction 1") or ("Hearing 1"), And the Secondary Assault infraction ("Infraction 2") Or ("Hearing 2"), these hearings were riddled with due Process Violations. Which ran afoul of Constitutional rights. Violated Policy and directives of the New State City Department Of Corrections (THE "Department" Or "D.O.C") and the laws of the State Of New york.

8. As a Consequence of these massive breaches, Mr. Alli was mandated to be confined to disciplinary segregation for an extended Period. During which time Certain named defendants Caused Plaintiff to endure heinuous confinement Conditions and exhibited deliberate indifference towards Allis medical needs.

9. As a direct result of these and other deprivations described herein, Mr. Alli suffered Physical and Psychological Pain, discomfort and humiliation, Including but not limited to Permanent / non-Permanet, Physical injuries and Sexual assault.

( 4 )

10. As a result Mr. dui seek's monetary damages (special, Compensatory, and Punitive) against all defendants. Public discipline and Sanctioning of assaulting officers and officers whom falsified reports. An a award of Cost and litigation fee's.

11. Plaintiff also seeks to invoke U.S.C Title 18 Sections 241 & 242 against all defendants in their official and individual Capacity. Seeking defendants to pay a fine of up to Ten Thousand dollars for each Violated law, right and or constitution. An the the imprisonment of all assaulting officers. Of a Sentence of no less than one year and no more than Ten (10) years. Also as the courts deem Just and Proper.

## JURISDICTION AND VENUE.

12. Jurisdiction is Proper under 28 U.S.C §§ 1331 because Plaintiff Seeks to enforce rights Secured by 42 U.S.C §1983, 1988 and 18 U.S.C 241, 242.

13. Venue is proper in this Court Pursuant to 28 U.S.C §1391(b)&(c)

## DEMAND FOR JURY

13. Plaintiff hereby demands a trial by Jury on any and all issues Pertaining to this actions including but not limited to, damages.

(5)

# THE PARTIES

14. Plaintiff UMAR ALLI Currently detained at Clinton Correctional facility. At most times relevant hereto Mr. Alli was a Pre-Trail detaince in Doc Custody at G.R.V.C.

15. Defendants Behari, Pedlar, Bravo, Almazar, spears, Bunton, John Doe officers whom were present or participants of the January 2012 Use of force. Said defendants are collectively "Primary Assaulting officers". Said officers were at all times relevant hereto, Uniformed Correction officers employed by Doc and assigned to Rikers Island facility G.R.V.C. The Priminary assaulting officers were required to conduct their dutys' in accordance with departmental directives governing, the use of force (Directive 5006-c), inmates access to medical care, and the minimum standards governing conditions of confinement established by the New York City Board of Corrections ("BOC). The Primary assaulting officers used a malicious amount of excessive force. Without good faith or penological interest. Defendants acted maliciously with the intent to cause harm. And showed deliberate indifference within the scope of their D.O.C employment and under color of state law. All defendants are sued in their official and individual capacity.

16. Defendants of the secondanary assault such as all John Doe Probe team officers, Captain Medina, officer Bunton, officer wong, and officer fluker, collectively referred to as ("secondary assaulting officers"). Have participated in the similar conduct of the preliminary assaulting officers and have violated the same laws, rights and duties. Defendants acted Under color of state law. All defendants are sued in both official and individual capacity

(6)

17. Defendants behari, Medina, Gates, investigation Captain of January 2012 use of force. And captain Lisa Steward Bowden, Collectively know herein as ("Uniformed and Supervisory officers") were at all times relevant to this Complaint Uniformed officers, Captains/deputys and or first line Supervisory officers. Uniformed Supervisor officers were required to Perform their duties in accordance with departmental directives in the investigating uses of force, Using force, inmate access to medical care, due Process and minimum standards. Defendants acted in the Capacity of an agent, Servant, and employee of D.O.C and New York City. Defendants acted within and outside the scope of there employment and under color of State law. Defendants falisified documents to cover the malicious Practices described herein. Defendants ingaged, encouraged, aided & abetted and or, failed to intervene in the Ceasing of the Subordinate's use's of excessive force. defendants are being sued in both the individual and Official Capacity

18. At all time relevant hereto, Adjudication Captains 1 & 2 One (1) whom Presided over the January 2012 Use of force infraction hearing. Two (2) whom Presided over the February 2012 Use of force infraction hearing. Both acting in the Capacity of an agent, Servant, and employee of D.O.C. Is responsible in ensuring disciplinary hearings are held in accordance to DOC Directive 6500 R-B. Also that all detainees receive fair trail without Due Process Violations. Yet defendants Violated Mr Alli's due Process Clause of the fourteenth Amendment, Eighth Amendment, and minimum Standards of D.O.C.. In which deprived life/Prison liberty and Property without due Process of law. Defendants acted with deliberate indifference disobeying the rules and directives governed by there Position. Defendants directly Participated in the due Process Violation. In which Caused atypical and Significant hardship and wrongful Confinement.

(7)

Resulting in deprivation of plaintiffs Personal libertys and regular enjoyment of Prison life in general Population. Defendants also aided & abetted in the long standing deeply embeded unconstitutional Policy of Sweeping the factual allegations surrounding Use of excessive force under the rug. By allowing inconsistent statements, denying video footage, and as further stated herein. Defendants are Sued in both there official and individual Capacity.

19.   At all times relevant hereto defendants Kathleen Mucvey warden of G.R.V.C, defendant Rose Agro Supervising warden of G.R.V.C. for some times relevant hereto. Defendant John doe Supervising warden during the time periods Rose Agro was not holding said Position, and defendant John doe Deputy warden of Security of G.R.V.C. Were all responsible for the Supervision of primary and Secondary assaulting officers as well as uniformed and Supervisory officers. Also for the care custody and control of inmates confined to G.R.V.C.. These responsibities were and are required to be Conducted in accordance with the legal mandates applicable to DOC facilities, Including but not limited to directives governing the use of force, inmates access to medical care, inmate grievance Procedure, due process and, BOC minimum Standards. At all times relevant hereto defendants stated herein acted with the scope of their employment and under color of state law. Defenants are sued in individual and official Capacity.

20.   Defendants Dora Schriro And Lewis Finkelman were at all times relevant hereto, The Commissioner and First Deputy Commissioner of D.O.C.. Respectively defendants Schriro and Finkelman are legally responsible for the operation of all of the Departments facilitys. Including but not limited to the, selection, Supervision, Promotion, training and discipline of all Uniformed and Supervisory staff, and for the care custody and control of all inmates in DOC custody.

(8)

These responsibilitys were suppose to and are to be conducted in accordance with legal mandates applicable to DOC facilitys. Incuding but not limited to directives governing the use of force, inmate access to medical care, inmate grievance Procedures, and due Process. Both defendants were aware of the unwritten Policy of the use of excessive force. Defendants were on notice Of Plaintiff Claims and aware of all assaulting officers Prior malicious Conduct. Yet failed to discipline or remedy the actions. At all times relevant hereto defendants schriro and finkelman acted within and outside the scope of duty and under Color of State law. These defendants are sued in their individual and Official Capacity.

21. Defendant florence finkle was at all times relevant hereto, The Deputy Commissioner of integrity and Policy for DOC. In this role defendants finkle was at all times relevant hereto, responsible for ordering and Supervising investigations of all use's of force incidents. Also for initiating recommendations for disciplinary action against officers, Captains, and deputys' who engage in misconduct. These responsibilitys' were to be conducted in accordance with the legal mandates applicable to DOC facilitys. At all times relevant hereto, defendant finkle acted within and outside her scope Of DOC Employment and under color of State law. She is sued in her individual and Official Capacity.

22. Defendant Murphy, who was the "Chief of department", at all times relevant hereto was responsible for the Supervision, Oversight and discipline of the assaulting officers and uniformed Officers herein, including the supervisory officers in all departmental Vails. These responsibilities were and are to be conducted in accordance with the legal mandates applicable to DOC facilitys.

(9)

Defendants aided and abetted in the long standing deeply embeded Unwriten Unconstitutional Policy and Practice of not Sanctioning officers for misconduct. Said defendant acted under color of state law and is sued individually and officially.

23. Defendant "JOHN DOE" Who was the "Deputy Chief of Department" at all times relevant hereto, Was responsible for monitoring and addressing all operational safety and security matters in DOC facilitys. These responsibilitys include maintaining statistics on violence and violent incidents at DOC facilitys. Also for creating procedures to protect personal safety of D.O.C staff Ind inmates within DOC custody. Defendants aided & abeded In the long-standing unwritten Policy and Practice of condoning, sanctioning and or covering up excessive use's of force. Defendant acted under color of state law and is sued In the individual and official capacity.

24. Defendants Micheal J. Regan and Hildy J. Simmons, were at all times relevent hereto, The Chair and Vice Chair of the "Board Of Corrections" (BOC), Respectively Regan and simmons were responsible for establising and ensuring compliance with BOC minimum standards, requlation of condition of cOnfinement and healtth care in all New York city ("City") correctional facilitys. Regan and Simmons were required to actively investigate serious incident. Evaluate DOC Performance, review inmate grievance and make recommendations concerning the same. Defendants aidded & abetted in the long-standing unwritten Policy of failure to disicipline and or investigate allegations of excessive force. Defendants acted outside and within the scope of their Doc employment and under color of state law. Both defendants are sued in their individual and official capacity

(10)

25. Defendants Cathy Potler And Richard T wolf, ESQ, Were at all times relevant hereto The "Excutive Director" and "Deputy Executive Director" of BOC Respectively. These full time employees Were responsible for ensuring that, health Care, Safety and Security and use's of force within all facility are maintained "at a level Consistent with legal requirement, accepted Professional Standards and Sound Professional Judgment and Practice" Togather, defendants Potler and wolf were responsible for monitoring the Compliance of all D.O.C facilitys with these mandates. At all times hereto defendants acted within the Scope and outside the scope of D.O.C Employment, and under Color of State law. These defendants Are sue in their individual and Official Capacity.

26. Defendant Kennith T. Armstead was at all time relevant hereto the "Director of field Operations" and a full time employee of B.O.C. In this role defendant Armstead Supervised the daily activitys of the field Representatives who are required to Canvas DOC facilitys daily for the Purpose of monitoring Compliance With BOC minimum Standards. Defendant Armstead was required to conduct frequent and targeted inspections of D.O.C facilitys to identify and resolve Known Problems. Including but not limited to unjustifiable use's of force and conditions of Confinement. And breach of minimums standard. Defendant failed to discipline, Sanction, investigate, and Or aided and abetted in the Covering up of the routine malicious use's of force. Defendant is being Sued in his official and individual Capacity

(11)

27. Defendant City of New York ("City") is a municipal corporation. In which, through the department, Operates a number of detention facilitys including G.R.V.C. The City through its Senior Officials at the City or central office and in each facility Promulgates and implement Policy's including but not limited to the use of force, reporting and investigation of use's of force employed by uniformed staff, Inmates Grievance Procedures, due Process, access to medical care/treatment and, Other Services mandated by local law and Court order. The City is also responsible for the appointment, training, monitoring, Supervision, hiring and conduct of all DOC and BOC Personnel. Including the defendants of this action. The City is sued in the Official Capacity.

28.   At all time relevant hereto, John Doe's 1 Through 6 were Field representatives serving as BOC "Eyes & Ears" into City facility's. These defendants were responsible for conducting site visits at all DOC facilitys for the Purpose of documenting and investigating Prisoner and Staff complaints and Violent and unsual incidents. At all times relevant hereto John Does 1 Through 6 acted within and Outside the scope Of their Doc Employment and under color of State law. These Six (6) John doe defendants are sued in their Official and individual Capacity.

29. Defendants ARMSTEAD, FINKLEMAN, Finkle, Potler, Wolf, Simmons, Schriro, regan, Agro, Mulvey, Murphy, ADW Stukes, ADW Bennett, ADW LEWIS, ADW Collins, ADW Sullivan, WARDEN DUFFY, City OF New York, are herein Collectively refferred to as ("Policy making Defendants") Said defendants withheld evidence in which was the Video Footage Of Outside the visiting room of G.R.V.C. Which revealved the Idenitys of January 10 2012 use of excessive force, Officers/ John Doe Defendants, and captured some of the assault.

(12)

Said defendants were Put on notice of plaintiffs yet failed to discipline Sanction, investigate the use's of force and Conditions of Confinement, and or aided and abetted in the Continuance or Covering up of the Misconduct that was deeply embeded and Long-Standing Un-Written Policy Consituting law. Defendants are sued in their official and individual Capacity.

30. Defendants Pravin Bajan MD of G.R.V.C, Physician Abdelnur MD of Mount Sinai of Queens Hospital, and Devorah J. Nazarian MD of East ELMHURST HOSPITAL, Collectively reffered to as "Physicians" Said defendants falsified reports with the intent to Cover the Serverity of the Malicious assault and or to facilitate the assaulting Officers Cover Story for Justification to use excessive force. Defendants acted Outside and within the Scope of employment and is being Sued in their individual and official Capacity.

31. Defendants Estrella Hector, Kevin Harris, and Willam Jerome are also collectively reffered to as ("Secondary assaulting officers") As shown and Stated in Paragraph ¶16 as fully stated herein. Defendants are Sued in both official and individual Capacity.

32. Defendants Officer Diaz, Officer Lopez, Officer Stokes, Officer Villette, Officer Spiris, Officer SANCHEZ, Officer Kourouklis, and Captain Carter Collectively also know as "Primary Assaulting Officers" Plaintiff repeats and re-alleges Paragraph ¶15 as if it was fully stated herein with the same effect and force. All defendants are sued in their Official and individual Capacity, And John Doe visiting officer whom worked on day of use of force

33. Defendants ADW Sullivan, ADW Collins, ADW Stokes, ADW LEWIS, Collectively know also as ("Uniformed and Supervisory officers") Plaintiff repeats and realleges Paragraph ¶17 with the same effect and force as if fully Stated herein. Defendants are sued individually and Officially.

(13)

34. Defendant "John Doe" The officers whom worked on the G.R.V.C visiting room on or about January 10 2012. One of the officers where Spainsh Approximately 5'8, 150 pounds. Said defendant Participated, encouraged, sanctioned, aided & abetted, and/or failed to intervene in ceasing the excessive use of force. Defendant is being sued in both the individual and official capacity.

35. Defendants Investigator Daggett-Terenzi, Investigator Arnold #2105, Investigator I. Martinez #136, Investigator Garcia, John Doe Deputy Director of Investigations, and John Doe Assistant Commissioner Of Investigation, collectively know as "Investigators" and Defendant John Doe Deputy Commissioner for investigations & Trails. Defendants were and are at all times relevant hereto employed by the City of New york, Board of Corrections, and/or State of New york. Defendants are responsible for sanctioning, disciplining, and investigating Use's of force and or unusual incidents, within D.O.C facilitys. Plaintiff met with Investigators on or about January 11 2012. Regarding the Primary and Secondary excessive use of force and/or Sexual abuse. Defendants failed to properly investigate Mr. Alli's claims, withheld material evidence in which was video footage, and failed to discipline defendants despite there wrong doing. Defendants act with deliberate indifference with intent to Cover, sanction, and aid & abett in the long-standing Policy Of use of misconduct. Defendants are sued in there individual and official Capacity.

36.

(14)

# PRELIMINARY STATEMENT

37. The conduct engaged in by all stated defendants named herein was, at all times, subjectively and objectively unreasonable and in violation of Mr. Alli's clearly established rights

38. On or about January 10th 20th. Mr. Alli became yet another victim of a "Pattern of brutality" in New York City Jails. Also a pattern of brutality against detainee's in unmonitored by cameras locations within departmental facilitys, including but not limited to G.R.V.C. Senior Officals, Policy making Officials, Supervisory Defendants, investigators, the City and other high ranking D.O.C Officials are aware of and tolerate of primary and secondary assualting officals and other insubordinate employees. Whom are unconsistent with formal Policy. These Practices are so wide spread long-standing and deeply embedded they constitute law and unwriten departmental Policy. These Practices are continuing and "deeply entrenched" in rikers Island City Jails. See," Alli v. Steward-Bowden 11cv-4952 (PKC)(KNF) Challenging the routine use of force in unmonitored areas. And the cover-up tatics including but not limited to, falsifing reports and hoarsed disciplinary infractions". See Also Nunez v. City of New York, No 11-cv-5845 (LTS)(JCF) S.D.N.Y 2012. The sixth Class action Challenging the "Routine and institutionalized Staff violence against detainee's" in New York City Jails". See Also " Ingles v. Toro, No. 01-cv-8279 (S.D.N.Y 2006) requesting system wide relief from excessive use's of force in City Jails.". See Also " Jackson v. monteman No. 85-cv-2384 (E.D.N.Y Nov. 26 1991), Challenging the same conduct in the Brooklyn houses of detentions". See Also," Reynolds v. Ward No 81-cv-101 (S.D.N.Y) Chanlleging excessive and unnecessary force in the bellevue Prison Psychiatic ward. See Also " Fisher v. Ward, No. 85-cv-2128 (S.D.N.Y March 28 1990), Challenging excessive force and Similar conduct.

(15)

In addition to these class actions litigations stated above. The primary and secondary assaulting officers and senior DOC supervisors and uniformed Staff, and policy making defendants have been repeatedly sued by detainess alleging excessive force conflicted by prison staff and D.O.C sanctioned cover-ups. Some cases of stated misconduct are reported herein. SEE "Youngblood v. Baldwin, No. 08-CU-5982 (S.D.N.Y July 22 2009)", alleging staff brutality at G.R.V.C resulting in a skull laceration and a broken nose. SEE Also "Rice v. New York City Department of Corrections, 03-CU-592 (S.D.N.Y Aug 26 2004) Alleging the malicious assault of two inmates at G.R.V.C resulting in a collapsed lung and contusion hematomas, in one case, and a neck and spinal cord injuries) causing Permanet Stutter, in the other." SEE Also "Joesph v. City of New York Department of Corrections No. 02-CU-9219 (S.D.N.Y May 28 2003) Alleging a brutal assault at G.R.V.C causing a orbital fracture. See Also "Reynolds v. City of New York, No 11-CU-621 (S.D.N.Y Nov 21 2011)", "Williams v. City of New York, No. 09-CU-5734 (S.D.N.Y Aug 12 2010)", "Lee v. Perez No. 09-CU-3134 (S.D.N.Y March 12 2010)", "Shuford v. City of New York, No. 09-CU-945 (S.D.N.Y Oct 22 2009)" "Belvett v. City of New York, No. 09-CU-8090 (S.D.N.Y Nov 18 2010)" "Mull v. City of New York No. 08-CU-8854 (S.D.N.Y March 22 2011)", "Diaz v. City of New York No. 08-CU-439 (S.D.N.Y March 24 2009) "Lugo v. City of New York No. 08-CU-2931 (S.D.N.Y Jan 20 2009)" "Willams v. City of New York, No. 07-CU-1105s (S.D.N.Y Sept 24 2008)", "Coadrado v. City of New York No. 07-CU-1447 (S.D.N.Y Dec 26 2007)" SEE Also "Scott v. City of New York, No. 07-CU-3691 (S.D.N.Y Oct 18 2007)

39. At the times of the Primary and Secondary assault, Plaintiff was an Enhanced restraint Category inmate, and a pre-trail detainee housed in the Punitive segregation Unit of Rikers Island G.R.V.C. Both enhanced restraint Classification Category and Punitive Segregation Units and or mental health assessment units for infracted inmates (M.H.A.U.i.i) are governed by special guidelines and directives. Which exclusively set forth procedure of any & all

(16)

Conduct. Including but not limited to, the transporting of an detainee in or Outside the facility, the opening of a detainee's Cell, and the opening of a detainee's cell and or any location in which a detainee is Confined. E.g. Shower, Three points search Area, Visit Cages and recreational Pins. Before a inmate of any Category (Enhanced Restraints, Red ID, CMC) or released from a Closed area, escorted, and or moved he must be properly Cuffed and secured with the applicable Proper mechanical restraints. These directives and or departmental Policy also include rare expections. Defendants falsified documents allegeing that Plaintiff was not properly Secured and then became assaultive in which warranted the excessive use of force. Primary Assaulting officers falsely made these allegations to Sustain there malicious Conduct, and there after Policy making defendants and supervisory, and Investigaton, aided & abetted in these false claims. Despite inconsistentcies in reports and injurys inflicked to Plaintiff.

## EVENTS LEADING TO THE JANUARY 10 2012 USE OF EXCESSIVE FORCE.

40. On or about January 10 2012 Mr. Alli WAS Scheduled for a deposition in relation to a Pending litigation against G.R.V.C. This deposition was scheduled for Approximately 10 AM with the City law Departments' Assistant Corporation Counsel ATTORNEY "LESIEY MYBAYE.

41. The routine established Counsel visit location within G.R.V.C designated for the meeting with Counsels and or despositions was allegedly closed due to maitence of said area. Wherefore all Counsel Visits were being Conducted on the Visiting, booth visits area of G.R.V.C.

(17)

42. The main visiting area of G.R.V.C is composed of approximately six (6) Componets. Which include, (1) Waiting area, (2) C.M.C visiting area Section, (3) Punitive Segregation/Mhauii Visiting Section area, (4) General population Visiting section, (5) Non-Contact "Booth Visit" Section (in which I conducted my depositions), and (6) the inmate search Area. In the main visiting area there are Two (2) approved entrances and or departure area. And two (2) Unapproved entrances and or departure One (1) the fire emergency exit and or entrance, and Two (2) the area in which the Civilians enter and depart whom come to visit detainees, is the unapproved areas. (In which plaintiff believes most of the unidentified assuitive defendants entered and or exited Yet Can be exposed due to Camering in said immediate area.)

43. Outside both the waiting room section of the G.R.V.C Main Visiting room and the search Area entrances, Cameras are inplace in the main Corridor of Outside and or infront of said entrances. (In Which is the same corridor plaintiff was dragged from after the assault to be taken to the Clinic. And the same Corridor in which some of the assaulting Primary John Doe defendants entered the main visiting room.) Upon information and belief said Cameras/d.v.R recorders. due record and monitor.

44. During the disciplinary hearing in connection with the infraction that arose from the January 10 2012 excessive use of force, Plaintiff Singley, directly, and with Precise identification requested said footage to be used and reviewed to identify assuitive John Does. The "John doe" adJudication hearing officer maliciously and unJustly denied and or failed to review and or reserve said footage. Plaintiff also when Speaking with the investigation division/defendants Investigators, Plaintiff requested said footage to be reviewed to Collaborate his truth that he was maliciously assaulted by multiple officers before the Pushing of the Pin (alarm

(18)

45. In the center of the six(6) Componets of the main Visiting area of G.R.V.C, there is a station which most Officers call the "bubble". Which has a clear view to the general Population section, Mhauii/Punitive Segregation Section, and booth Visit Section. In said bubble and or station officers are assigned to work said post, or occupying said bubble control the electronic doors and lighting, and being an overseer of all viewable areas.

46. On the day of the primary assault a Officer whom was Spanish 59 and possibly an officer named Lopez was assigned to said post and facilitated, sanctioned, encouraged and Participated in the malicious use of excessive force. A reviewing of the log Book will help expose the true identify and confirm the assumed identity of said John Doe defendant.

47. On January 10 2012 despite the depositions begining/Commencement time being Proposed for 10ᵃᵐ, Ms Mybaye the Counsel for defendants did not arrive until hours late. Thus causing Plaintiff to be Confined in the booth Cage for hours awaiting her and deposers arrival. Ms. Mybaye arrived at approximately 1:00ᵖᵐ. and Commenced the deposition. The deposition was concluded at 2:30ᵖᵐ or 2:45ᵖᵐ due to ms mybaye wanting to leave before shift change, At 3:00ᵖᵐ.

48. After Ms. Mybaye departure (In which a exact time can be identitfied after reviewing the log book documenting the time she signed out of the facility and or the G.R.V.C Visiting room.) Plaintiff was lefted waiting in the booth visit Cage for his escorts back to his housing area.

49. Plaintiff was lefted waiting for a escort for a long duration. In which growing impatient he begin to shout to officer in the bubble, saying "where's my escort". Said officer turned off the lights and lefted Plaintiff in said Cage. Wherefore Plaintiff continued to shout.

(19)

Soon after Mr. Alli heard mutiple foot steps and scuttling that sounded like a large group of officers. plaintiff also heard walkie tallies. Plaintiff then began to become suspicious, leery and nervous of the increased activity. Knowing that officers turned of the lights and because he was the only one detainee in the entire visiting area. Upon belief plaintiff states that the lights was turned off to avoid any camera from Capturing their arrival. And so defendant can hide in the search Area.

50. Most unknown defedants hide in the stalls of the waiting room.

51. When defendents Bhar, Behari, Spiris, Bravo, Almazer and John doe. As the apparoacting officers came & placed the restraints on Mr. Albin, through the cuffing port. Plaintiff was cuffed correctively with a waist restraint belt, Hand cuff and shackles.

### THE ASSAULT OF JANUARY 10 2012 AND SEXUAL ABUSE.

52. After being placed in the mechanical restraints Plaintiff was escorted from the booth visit section to the waiting area section for an alleged departure. Entering the waitin room in which was extremely dark. Defendant Pedler initaled the excessive use of force. By striking a closed fist to Mr. Allis' facial area thus knocking him to the floor. Then mutiple approximately fifthteen (15) began to storm Alli from hidding rocations on the visiting floor.. With Alli on the floor still cuffed and in extremely Pain. The applicable primdary assualting officers began brutally Kick, stomp, throw objects and use objects to assoult Plaintiff. In the same instance defendants issued death threats and demeaning words.

(20)

53. Assaulting defendants spat on Mr. Alli, Threw Hard plastic with Metal componets bins on his body, Stated that they was going to kill him, Called him a asshole whom likes to sue People and ETC. Also during the assault Plaintiff Was sexual assaulted Ind kicked in his Penis. Captain Behari also Choked Plaintiff with the Waist restraint belt.

54. Defendants Uillette, Behari, Rhor, Lopez, Spearz, spiris, Kouroukliis, Diaz, Stokes, Captain Carter, Almazar and all John Doe Defendants equally assaulted, Condoned, and failed to cease the malicious assault.

55. After being dragged to the Main Clinic and assaulted in the Shower Pin, Plaintiff was then transferred to East Elmhurst hospital for inadequate medical treatment/care and Mis-dianosis.

56. Mr. Alli had Spleen, Spine, and back damage. That disabled him from Walking. The Stated defendants and responding officers/ Captain intentionally and willfully refused to call medical for a Strecher. Wherefore defendants execerbated the inJurys when they dragged him to the mini-Clinic.

57. At East Elmhurst Hospital Mr. Alli was partially treated for his Seen and unseen inJuries. See medical reports for listed inJuries. Despite the pain and Suffering plaintiff was Subjected to. Adequate medication was not Prescribed before leaving the hospital and or at Rikers Island. Nor was a M.R.I Test Scheduled for the detection of Claimed inJuries to back and Spine. Nor was plaintiff given treatment or received any Follow-up for his Urination of blood.

58. While back on rikers Island plaintiff made daily Complaints to nurses and doctors whom did rounds about his inability to walk, Stand for long Periods, Chronic testicular pains and Urination of blood. Also the intense headaches, neck Pains, and back Pains. Yet they failed to assit and or treat for Stated inJurys.

( 21 )

# MR. ALLI WAS DENIED APPROPRIATE
## MEDICAL CARE/TREATMENT

59. The Board of Corrections Minimum Health Care Standards ("M.H.C.S")
requires that inmate receive Prompt Medical Care and it explicitly Prohibits the
delay, denial or, interference with an Inmate's access to medical treatment.
It States inmates in need of emergency Services are to be granted access
to Such Services Promptly. In addition, Such Services are to be Provided
competently and "at a level Consistent with legal requirements," accepted by
Professional Standards and Sound Professional Judgment and Practice.
(Minimum Standards § 3-01(A)). The Care received immediately after the
incident and in the several weeks extending to months that followed
fell grossly below this Standard.

60. After the assault plaintiff Suffered. Plaintiff was denied
or didn't receive Pain medication for his extreme Pain and discomfort.
In addition despite expressing extreme Pain and discomfort the examing doctors,
facility Sick Call nurse's/doctors and or "Physicians" failed to follow prior
recommendations, Prescribe adequate medication, and or schedule follow-up
appointments.

61. Had the "physicians" Issued a Proper exam, Proper treatment, and
follow up care, as required under M.H.C.S., Civil rights, Correction Law,
and all applicable rights and laws. Plaintiff's Pain and Suffering or
his Permanent injuries he sustain Could have been minimized or
treated before they wrostened.

(22)

# DEFENDATS DEMONSTRATED DELIBERATE INDIFFERENCE TO PLAINTIFFS NEED FOR MEDICAL CARE

62. In the months following the Primary and Secondary assault. Mr. Alli was denied access to necessary medical treatment causing him to suffer Permanent physical injury or extreme pain Proximately related to the attack.

63. During his Confinement in disciplinary Segregations Mr. Alli made daily request for pain medications or to receive increased Pain medication. Plaintiff requested M.R.I Testing, Physical therapy and to receive an second opinion on Conditions. All request were ignored, delayed, or interrupted. Mr. Alli continuously made daily request for medical care to the Personnel of Corizon Health Services, Prison Health Services, Correction health Services and or Physicians. Plaintiff Verbally and in written form made these request. Plaintiff also made these request to Captain Behari and all officers whom did tours of Mr. Alli's Confined housing area.

64. Mr. Alli Also wrote Rose Argo, Kathleen Mulley, Prison Rights Projects, Boards of Corrections, Department of Corrections, Edmund Duffy and including but not limited to Hildy J. Simmons. Said defendants were responsible for the discipline, Supervision, monitoring and training of subordinate whom work in their Care, custody, and Control. Some or all of Plaintiffs Complaints were also brought to the attention of the medical director or G.R.V.C and or Rikers Island. Said defendants were also responsible in Assurance to receive medical Care of detainees or directing medical treatment be provided. But failed to otherwise facilitate access to medical attention for mr. Alli

(23)

65. Upon information and belief, defendants John Doe's 1 through 6 Boc's field representatives canvased G.R.U.C during January 11 2012 and months after. And well before said date of January 11 2012 they knew of the unlawful practices and customs. Yet defendants failed to document, report, investigate, or cease said conduct. In which caused a furtherance in the deprivation and misconduct. And a violation of clearly established rights of Mr. Alli.

66. The joint and conspirational action of defendants stated herein constituted deliberate indifference to a substantial risk posed to Mr. Alli's health and safety. Said action fell short of Doc and BOC directives, policys and standards.

67. Most and or all of given complaints were not answered.

68. In attempt to cover-up the extent of injurys sustained defendants conspired to falsify documents, misdiagnosis, interfere with treatment, and or failed to outright provide treatment.

69. Defendants also conspired to draft a infraction for falsified discipinary offense in connection with the incident of January 10 2015.

## THE INFRACTION(1)/INFRACTION HEARING ARISING FROM THE JANUARY 10 2012 INCIDENT, AND THE CONSPIRED COVER-UP ACTS/CORRESPONDING DUE PROCESS VIOLATIONS

70. Officer Pedlar and primary assaulting officers infracted plaintiff.

(24.)

for disciplinary offenses purportedly arising due to his behavior during the "incident."

71. The infraction was a series of dishonestly, and forgery and of the series of events intended to cover-up the wrong acts, namely the assault and sexual abuse inflicted on Mr. Alli.

72. The infraction/ticket, as required by D.O.C Policy, was to trigger a adequate investigation within 24 hours. Upon information and belief an investigation was commenced by the investigation defendants and at some point defendant Captain Lisa, Steward-Bowden. However both, or all investigation that arose was laced with inefficientcies, Bias findings, Withheld evidence, And due process violation.

73. The investigating defendants, Captain Lisa Steward-Bowden, Rose Agro, Kathleen Mulvey, Edmund Duffy, ADW Lewis, ADW Bennett, ADW Sullivan. and the John Doe Adjudication Captain 1. All failed to review Mr. Allis excessive force allegations, failed to review video footage plaintiff requested, failed to obtain a statement from all participants of incident.

74. The hearing for the infraction further perpetuated the cover-up.

75. John Doe Adjudication Captain 1 violated Plaintiff fifth, Eighth and fourteenth amendment of the Constitution. As well as Doc's and Boc's minimum standards. Due process of law, Correction law, and the rules/laws of the state or city. Including but not to directive 6500 R-B.

76. John Doe Adjudication Officer/Captain acted with deliberated indifference violating all rights and laws stated herein. By not following the rules, policy, laws, and directives governed by position. Defendant willingly, knowingly, and intentionally violated due process rights. By denying witness, denial of material and excupatory evidence, concluding with outside unsupported information, allowing inconsistent statements without question. Add the denial to question assaulting officers regarding to inconsistencies and omissions in their reports,

(25.)

Defendants failed to review and or facilitate the Preservation of the adamantly requested Video footage. In which Captured the areas Surrounding the incident. Such as the entrance of G.R.V.C's main Visiting room, the general Population Section of the Visiting room, The entrance and or Exit of the Emergency fire door, and the Civilian holding room. Plaintiff requested the following to Support his Claim, that Approximately 15 Officials and Policy-making defendants/Higher-ups Conspired to maliciously assault mr. Alli. Thus invoking Claims of 18·U.S.C 241, & 18 U.S.C 242. Defendants denied Said request With malicious intent to hide the identitys of the assaulters

## "INVESTIGATION"/DIVISON"

77. In connection with the January 10 2012 use of excessive force incident, the Investigation Division met with Mr. Alli for a tape recorded interview and questioging regarding the intricate details of the incident. Despite this interview being recorded the "investigators" Still misalleged Plaintiffs Statements in there report of investigation. Said Conduct was not a harmless error, and done intentionally to Conceal the truth to the incidents and or to collaborate with defendants falsified reports.

78. The Investigators willfully neglected to question described assaulters whom were John Does and or partially identified. Defendants failed to adequately review injurys, and failed to review requested ~~████~~ Video. Defendants failed to Sanction, discipline, and failed to make recommendations to Cease the malicious Conduct. The "Investigators" aided & abetted in the Continuance of the deeply embedded Unwritten Yet Common Policy of using excessive force and

(26)