sweeping incidents under the rug. The "Investigators", City Law Department, and "Policy making defendant" knew of the municipal policy of using unnecessary and or excessive force.

79. The unconstitutional practices that daily occur have been uncovered and substantiated by investigations of New York City...

## MUNICIPAL POLICY

80. The further stated Customs and Practices that routinely occured, occured for the purpose to control, discipline and embed fear to detainees. Also to prevent the truth behind severe allegations from surface. The un-constitutional practices that daily occur have been uncovered and substantiated by investigations of, the New york City Department of Corrections Investigation Division, D.O.C inspector general, B.O.C, D.O.I, and the Prisoners Rights Project. Due to countless criminal indictments, law suits whether state or federal. In addition all the recordings of countless Prison officials whom have been disciplined, complained upon, fired and or removed from assigned Post. Although countless Prison officials whom were complained upon or disciplined for misconduct. Countless officials have "sliped through the cracks" never even being at the minimal investigated nevertheless disciplined. All due to the faulty investigations conducted by Policy making defendants, City of New York, Supervisory defendants and the Investigation Division.

81. To cover the unconstitutional practices Prison officials formed a custom to conspire to make false reports. This custom was termed "Write With Us". Prison officials also intentionally failed to answer detainee's complaints and grievances. So the fact of the incident wont arise and be stated as officials falsely alleged.

(27)

82 . On information and belief, as early as September 2003 a former Correction officer Roger cullen, see "Jackson v. City of New York, Et al, 04CIV 5799, in his disposition he testified he witnessed and or complained to the department about the instances of Corruption involving misconduct ranging from excessive force, to lying and falsifying reports.

83. Detainees have been routinely subjected to excessive force and or being maliciously assaulted in location's without Camera footage.

84. In many instances inmates have sought to reveal these Unlawful Practices. See, "Andy Ramos V. Capt. Merced Et, AL 10-CU-8465(JGK)(GWG)", In which Ramos a pre-Trail detainee adolescent whom was assaulted in the mini-Clinic resulting in Seruere injurys... (Mini clinic neglected Cameras.). See Also "fountain V. City of New York 10-CIU-7538(BSS)(KNF). fountain whom was a pre-trail detainee adolescent Whom was maliciously assaulted. in a location that neglected cameras. fountain Sustained Seruere injurys.

85. One of the many motives for Prision Officials Practices Stems from the municipal and Superuisory/Policy making defendants failure to train, Superuise, and discipline. Also the Inadequate training, inadequate systems for investigating and disciplining staff for the Misuse of force. And the failure to Implement D.O.C's Use of force Policy Plays a Significant role in the Continuation of these Practices.

86. Investigation Division, investigations and Departmental facility investigations of the Misconduct/Misuse of force Should require Several requirements. Yet the defendants Investigators, City of New york, Policy-making defendants and Superuisory defendants all fall Short of required Procedure. In which Causes the investigations conducted if any to go unfounded or Unreported.

87. The deficiencies with these Processes are as Stated; (1) agency lack of thoroughness, (2) failure to Pursue Unanswered questions, (3) failure to address whether staff Conduct actually Complied with Policy, (4) Inadequate efforts to identify and interview witnesses, (5) failure to explain how Conflicting evidence was resolved, (6) The lack of a double standard of interpreting medical records and injuries Photographs, (7) magnification on discrepancies in inmates Statement and failure to inquire into discrepancies in Staff Statement and reports and (8) use of boilerplate language, lastly, (9) Reaching for Some basis to approve Staff Conduct.

88. The Systematic deficiencies in the above Stated areas are a Significant cause of the Misuse of force. The failure of the Stated defendants to guide and train its Officers in the Correct Way to use force if ultimately necessary. And the failure to monitor, investigate and discipline the Misuse of force has allowed and indeed even inevitable and unacceptably caused the high rate of excessive force by Staff on detainee's. These Practices have been revealed in many cases Such as but not limited to "Fisher v. Koehler 692 F.Supp 1519 (S.D.N.Y 1989)

89. While a Single incident maybe viewed as mere negligence, yet there are repeated examples of falsifying reports, Excessive force used in areas without cameras, Inadequate medical care, and due Process violations at disciplinary hearings.

90. Through the countless cases, allegations, Suits, investigations, and departmental reports. The Defendants herein have been made aware of the wide spread Practice by Prison Officials of Sanctioning encouraging Participating or covering up these unlawful Practices. A practice that causes further abuse. Defendants Conduct Constitute a municipal Policy Practice and custom. In which is deeply embedded in the Culture of the Department Of Corrections implementing law.

91. Although this information was known to the department, Board and City defendants failed to protect and were deliberately indifferent to the dangers posed by their insubordinate employee's.

92. As a result Plaintiff Umar Ali was assault Physically and Sexually on January 10 2012 and february 23rd 2013 by Prison Officials whom have been complained upon, disciplined Or sued for similar Conduct.

93. furthermore Plaintiff was subjected to the City's, John Doe Adjudication Captains, Wardens, B.O.C, D.O.C and the supervisory/Policy making defendants Policy of imposing unlawful and unsupported disciplinary Confinements without due Process of law.

94. The Policy and Practices have been long standing and has effected millions of inmates including Plaintiff. Many detainees have attempted to reveal and Challenge these practices. While others took no effect or effort due to ignorance or fear of retaliation.

95. The custom and law of denying due Process and Violating D.O.C disciplinary Procedures have been revealed in the following Cases but not limited to Said Cases. SEE "Chad Hooks V. New york City Dept of Corrections, 929 N.Y.S. 2D 200, 31 Misc, 3D 1225 (N.Y. Supp 2011)", In which States Prison Officials Violated due Process." SEE ALSO "Henerson V. City of New York Dept of Corrections 711 N.Y.S. 2d 180 274 A.D. 2D, 328 (N.Y. A.D 1st Dept)

96. Defendants failure to Cease said Customs and Policy despite Knowledge bespeaks a deliberate indifference by Officials to the agony engendered haphazard and ill Conceived Procedures. Thus Causing Plaintiffs incidents described herein. And Ultimately Constituting municipal Policy and liability.

# RETALIATION CLAIMS

97. After the Primary assault of January 10 2012, When Plaintiff was released from East Elmhurst Hospital he returned to Rikers Island G.R.U.C. Plaintiff housing area was change Yet the new location he was Placed frequented the same malicious Captains, Deputys, and Officers whom worked his Prior housing area and or toured there.

98. The new cell location in which plaintiff resided was inoperable and Yet defendants still forced plaintiff to occupy said cell. Said Cell was inoperable due to the known Plumming defects. Plaintiff wrote mutiple Complaints and or grievances to the grievance Clerk, grievance supervisor, Rose Agro, Kathleen Muuley, Prison rights Project, Board of Corrections, and Uerbally to Captains, deputys, and housing area Officers. Work Orders to fix said toliet was allegingly submitted, Yet no Corrective actions were taken nor was plaintiff moved to a different Cell. In which Caused plaintiff to dally Smell the fecesces and urine. Plaintiff also had to urinate in the Sink due to the toliet not Properly Working

i. Secondary Use of force & Sexual Abuse
   On or about february 23 2012.

99. On or about february 23 2012 within Rikers Island G.R.U.C, Housing area 13³ an institutional Search was Conducted. When officers approached Mr. Allis' Cell they threatend him with Physical harm and Sexual abuse. In retailation of Prior litigation and January 10 2012 incident.

100. Due to Serverity and belief Of threats and medical Condition of Plaintiff, Plaintiff expressed that he was not refusing the Search, Just requesting

(31)

a change of the officers whom stated their malicious intent.

101. Plaintiff pleaded to captain medina that he was not refusing the search and only wanted a change of the officers whom was appointed to search his cell, in the interest of justice and in light of the safety and security of Plaintiff. Despite plaintiffs' sincere crys for help captain medina maliciously denied said request with the intent to aid and abett in the proceeding conduct.

102. Subsequently a chaplin came to Mr. Alli's cell stating that he was going to be subjected to a cell extraction. Plaintiff also expressed to the Chaplin that he was not refusing the search just requesting a change of searching officers due to officers stated the will sexually assault and physical assault him. The Chaplin lefted the front of the Plaintiffs cell for approximately Three (3) minutes and when he returned he stated Prison Officals Stated they do not neogciate with terrorist. In which was discrimination due to plaintiffs name and religious beliefs.

103. Furthermore the prope team officers/captain and camera man came to Allis cell. The Camera men William Jerome began recording with an hand held camera and asked was I refusing the search. I told him no I fear for my life and was told I would be molested and abused. He attempted to speak over me so the Camera he was holding would not hear me. Moments later Plaintiff was extracted by officers fluker, wong, Estrella, Bunton. During the cell extractions Officer Bunton inserted his finger or object up the rectum of plaintiff. While Officer fluker, wong and other Officer Punched kneel and or forcefully twisted Plaintiff's hands and wrist while on the ground in full Compliance. The probe team Captain Medina took no measures to cease or prevent the actions endured. Captain Medina had a reasonable opportunity to prevent said incident from occuring Yet aided and abetted in the underlining conduct

(32)

ii. Disciplinary Hearing Due Process Violations
   AND COVER-UP TATICS.

104. After the February 23 2012 Use of force an forged
Infraction was written by assauting officer Bunton. With the
intent to conceal the facts of the incident, and to punish Plaintiff
With disciplinary Confinement in which is not Supported by factual Claims.

105. The infraction allegedly triggered an investigation that was
Conducted by captain gates. Said investigation was department yet
was laced with ineffeciencies bias Conduct and Due Process
Violations. The John Doe Adjudication Captain 2 and Captain Gates
both failed to review the footage of the hand held camera held by
defendant Jerome, thus attempting to conceal that Plaintiff at no
Point refused the Search. They also failed to Obtain Material Statements
from Plaintiff or inmate witness. They failed to Obtain mental health Status
or Seek mental health Clearance Prior to the Commencement of the disciplinary
hearing or investigation.

106. Captain Gates and The John Doe Adjudication Captain 2 both failed,
to review the infraction for due Process Violations, and to investigate or
report the allegations of Sexual abuse and excessive force. They also
declined to question the secondary assauting officers regarding
inconsistencies and Omissions of the Sexual assauit and excessive force.
The Adjudication Captain 2 also without Penological Interest denied
Mr. Alli the opportunity to call and examine witness during the hearing
Defendants Violated The Departmental Due Process Directive 6500 R-B
intentionally with means equally adding to deliberate indifference
to known established rules, laws, and rights.

(33)

*iii.* Wrongful Confinement imposed AND
   Lost Of Liberty During Punitive Segregation Sanction.

107. As a result of, the Adjudication Captain 1 whom conducted the disciplinary hearing in Connection with the January 10 2012 use of force, the Adjudication Captain 2 whom Conducted the disciplinary hearing in connection with the february 23 2012 Use of force, Captain Gates, Captain Lisa Steward-Bowden, Officers pedlar and Bunton whom forged the Individual infractions; The City and Policy making defendants whom Condoned the long Standing Custom and policy, The action or inaction Caused Mr. Alli to receive a disposition of guilt in regards to both infractions.

108. The Confinement Sanctions to Punitive Segregation were erroneous and not Supported by due process of law or Doc/Boc formal requirements. The wrongful confinement could have also been avoided if the City, Policy making defendants, and Supervisory defendants would have Properly supervised trained and or disciplined the defendants herein. The higher ups, the City, Policy making defendants, and Supervisory defendants knew of or Should've known of both Adjudication Captains 1 & 2 being insubordinate yet failed to retain or remove from position.

109. Plaintiff a Pre-trail detainee at all times relevent hereto had a liberty interest to avoid Punitive Segregation Continuation and deprivations of normal Prison life. During Stated Wrongful confinement, Mr. Alli was subjected to the deprivation of ordinary Prison life, Loss of liberty, loss of amenity. These actions also resulted in mental and emotional distress. Also violations to the fifth, Eigth and fourteenth Amendments of the Constitution.

110. Plaintiff was force to Suffer Physically mentally and emotionally. Mr. Alli was denied ample rights and Priviledges that are mandated for general Population detainees. Plaintiff was rarey afforded his one hour recreational thus Causing him to be confined for 24 hours. A Officer at approximately 6 $^{Am}$ takes a list for recreation. When this Yard Officer is walking the Company all detainees must be silent. Detainees must Stand at their Cell Winclow(Gate) with the cell light on, and give the yard officer a head nod when he Passes. The head nod Signals that the detainee wishing to go out to recreation. If any detainee is talking, making noise or yells Yard list the yard officer is likely to deny the entire house of there one hour recreation. When the yard Officer makes his rounds he will not annouce that the list is being taken. Which burdens the ability to make Said list.

111. When and if the punitive Segregation recreation is afforded the location is outside in indiuidual Steel Cages approximately 7 by 7 feet. Said Cage doesn't Contain any Sporting or excercise material. And Contact with other detainee's is prohibited.

112. Plaintiffs Cell in Punitive Segregation was approximately 7 by 7 feet. Said Cell was equipped with a Small cement bed, no desk, a Small unvisable damaged Mirror, a Small Sink attached to a metal toliet, and attached to the metal Cell door is a Cuffing Port that is also used as a food Slot and a window thats 18 to 24 inches long and wide. Due to the location of the toliet and Cell window, detainees and prison officials Can watch an detainee whom is urinating or defecating. Thus invading Privacy. Detainees are not allowed to block or Cover said window or be Subjected to a Cell extraction or disciplinary action.

(35)

113. Mr. Alli was denied religious meals and denied eatting in a Congregate Setting. Plaintiff was feed through the Cuffing Port of his Cell. In which was filthy. Said Cuffing Port cant be cleaned due to it being Closed when not in use and Officers denying Cleaning material. Detainees are given a minimal duration to eat the the port is re-closed.

114. Mr. Alli was subjected to practices that violated the Conditions of Confinement and Constituting Cruel and Unusual Punishment. A deprivation of basic human needs and life necessities. In violation of D.O.C policy formal with directiues and minimal Standards. The prison conditions Plaintiff was forced to undergo were harsh, humiliating and antithetical to human dignity. Prison Officials showed plain disregard to the potential risk, dangers, and future harm these Conditions arose. Plaintiff was subjected to mutiple floods and sprinkler damage to personal propety. He was also subjected to hundreds of invasive Cell searches in which property was often Confiscated Unlawfully or damaged. During said searches all detainees' were forced to be stripped searched without any Penological interest, in violation of the M.H.A.U.ii & G.R.V.C operation manual / directive of punitive Segregation.

115. Plaintiff was Sometimes denied Shower usuage despite D.O.C regulations Stating a Shower should be afforded twice dally in punitive Segregation units of G.R.V.C. The Shower Cage is approximately 1 by 2 feet Cage affixed with a transparent Covering thus allowing the detainee to be viewed by on-goers. Said Shower Cage is often dirty with soap scum, mold and mildew.

116. Due to plaintiff being Confined in a Mental Health Punitive unit most of the cells were Often dirty with feces smothered walls. At times officers would Sadistically turn off the Sink and toilet water. Making it impossible to defecate, Urinate, wash hands, brush teeth, drink water, wash face/body and Prepare for Prayer. Plaintiff was also denied Cleaning Supplies, hygeine products, bedding, blankets, and toiletries.

117. Plaintiff was only given one six minute phone call daily in which some days he was denied phone usuage. The phone system for punitive segregation inmates are programed with two phone numbers that was requested and a six digit pin code. Said two numbers on the phone list and pin code can not be changed unless done by an officer. On several occassions Mr. Alli was prohibited from useing the phone due to officers switching his pin code or intentionally placing numbers incorrect on his list. If and when useing the phone, if no one answers and the answering machine picks up. The call is losted and said detainee must try again the next day. Most days Mr. Alli was unable to use the phone and contact family, friends, loved ones or attorney's. Growing distant to loved ones due to lost of contact.

118. Plaintiff did not have access to the general library. Plaintiff had partial access to the law library through submitting law library slips. A detainee must fill out said form and leave it in their cell gate. Some days these slips aren't collected. Detainees are unable to do adequate research or use law computers. Also when detainees submitt law work for notary or copying said work is often "lost" or destroyed

119. Alli was denied and deprived most or all of his personal property including but not limited to personal footwear, books, magizines, personal clothing, cosmetics, writing material, pictures, religious items, and commissary. He also was denied the ability to work, attend educational and vocational programs, watch television, associate with other detainees, attend indoor or outdoor recreational activitys.

20. Mr. Alli was forced to attend court appearances with departmental jumpsuits, instead of personal clothing. Causing attorney, judge, and court personnel to falsely judge.

121. Confinement in punitive segregation serves and is intended as punishment for the commission of alleged disciplinary offenses. The above constituted atypical and significant hardship, loss of liberty and deprivation of ordinary prison life.

(37)

# DEFENDANTS HEREIN CONDUCT EGREGIOSLY VIOLATED DOC AND BOC POLICY AND DIRECTIVES.

## A. Use of force Directive

122. The Department has implemented the Use of force Directive 5006 R. Under this directive, force is to be Used only after all reasonable efforts to resolve a situation has failed. This directive states that prison officals are permitted to Use force Commensurate to the level Of threat posed by the inmate at that time. This directive Prohibits Use of force by or as means to Punishment, when an detainee poses no threat or when the detainee is not Resisting Staff. This directive mandates that " Blows Should not be struck if Control hold's grasping " Or other less harmful methods " would be adequate to restrain the inmate."

123. The Primary assaulting officers and Secondary assaulting officers Collectively and individually Showed deliberate indifference to this mandate. Plaintiff was not harming staff or physically resisting them. Plaintiffs' Conduct did not at any times during these incidents warrant the Use of excessive force. Defendants did not, nor did they attempt to follow any reccomendation within Said directive. Instead defendants Use excessive force with Closed fist, feets/ steel toe boots, and Blunt objects.

## B. HEALTH CARE MINIMUM STANDARDS

124. The BOC has established minimum Standards Pertaining to Inmate access to medical Care.

(38)

125. Medical Care within D.O.C facility's is to be maintained "at a level Consistent with legal requirement, accepted Professional Standards and Sound Professional Judgment and Practice." These Standards Contemplate (i) the provision of prompt medical treatment and follow-up Care and emergency services; (ii) the regular training and development of health Care personnel and Correctional Staff as appropriate to their role in the health care delivery system; and (iii) an ongoing review and assessment of the quality of care provided to inmates.

126. In addition, these Standards expressly Prohibit D.O.C Staff, officers and medical personnel from delaying, denying or otherwise interfering with an inmate access to medical attention.

127. DOC officers with Knowledge of an Inmate's need for Medical Care are to report such need Promptly. In addition, all decisions regarding medical attention are to be made by health Care Personnel only. Sick Calls is to be available within 24 hours of request for care everyday. To the extent medical treatment for an inmate injurys is not available within Correctional facility, these Standards mandate that specialty Services be provided to inmates in the time frames Specified.

128. Defendants daily refused to offer Sick Call to Plaintiff and the specialty Service of a M.B.I TESTING. Defendants refused to Supply adequate medication and or interferred with Prescribtions.


C. DUE PROCESS DIRECTIVE


129. The Department has implemented the Inmate Disciplinary Due Process Directive No. 6500 R-B. This directive requires that D.O.C enforce its rules and regulations "fairly and in accordance with due process requirements" and Set forth the Process for investigating disciplinary

(39)

misconduct in D.O.C facilitys, The investigation process begins with a report and notice of infraction ("RNI"), to be prepared whenever "an employee reasonably believes an inmate has violated an institutional rule. The RNI is to be legible, detailed, and specific regarding the time and place of the rule violation and shall include- the description of the inmate's action and behavior."

130. The investigation is to be conducted by a supervisory officer who neither participated in or witnessed the subject- incident and is to commence within 24 hours of the incident.

131. Directive 6500 R-B instructs that an infraction be dismissed for due process violations including but not limited to, failure to commence the investigation within 24 hours, as well as the inclusion of contradictory, incorrect and or inconsistent allegations. This directives requires that use of force allegations by infracted inmate be reported and that all relevant evidence be reviewed by the adjudication captain who is then instructed to make a determination as to "why and where injurys were inflicted on the inmate (emphasis Added). This directive further requires that any allegation by the infracted inmate of "Abuse of Authority, malfeasance or corruption on the part of D.O.C Personnel... be reported in writing directly to the inspector General's office, or Department of investigation.

132. After a complete reviewance of Directive 6500 R-B, The disciplinary hearings transcripts and supporting reports, it is undisputed that Plaintiff rights were violated in accordance to stated directive and federal clause of due process

## EXHAUSTION OF ADMINISTRATIVE REMEDY'S

33. Pursuant to Directive No. 3376, In which is the Inmate Grievance Directive, allegations of Physical abuse and inadequate due process at disciplinary hearings are not subject to the inmate

(40)

grievance and request system. Nonetheless Plaintiff has exhausted his remedys in regards to the prison conditions, Use of excessive force, Wrongful confinement, Due Process Violations and all Claims herein. If deemed failure to exhaust, D.O.C's own conduct inhibited exhaustion and special circumstances existed that excused the non procedural Performance if any.

134. Plaintiffs effort to strictly comply with grievance procedures were inhibited by the conduct of DOC staff. Plaintiff requested the formal Grievance procedure, Directive 3376 Yet was denied. Upon information and belief, and direct knowledge DOC staff has on more than one occassion, confiscated copies of grievance directives found in possession of inmates and even plaintiff.

135. Furthermore, the grievance Procedure was not available to plaintiff because no one adequately explained it to him, Said procedure is complex. Indeed said procedure is such a complexity that D.O.C Personnel at all levels of employment including the Commissioner, Chair of B.O.C, Associate Commissoner, Wardens, Deputy wardens and Captains are largely unfamilar with how the Process or manner by which inmates are required to exhaust their administrative remedys. To that end it would be Unreasonable, if not impossible for plaintiff to adequately understand the Process. Mr. Alli followed the Procedure in accordance to his vague understanding. Doc Staff were Unable or willing to explain the necessary steps of exhaustion.

136. In addition, the M.H.A.U.I.I area in which Plaintiff was confined was not equipped with any grievance box, nor did grievance Officers regularly canvas the housing Area.

(4/1)

137. In addition officers routinely ripped inmate grievances and or refused to hand or mail grievances to the grievance clerk. also Mr. Alli was also retailated against on several occassions for exhausting remedys and or filing suits.

138. Lastly Plaintiff appealed both disciplinary decisions and filed article 78 Petitions.

139. Any failure by Mr. Alli to exhausted administrative remedys should be excused.

## 18 U.S.C § 241 AND 18 U.S.C § 242 CLAIMS

140. Plaintiff wishes to impose the Sanctions of 18 u.s.c § 241 and 18 U.S.C 242 against all Primary assaulting defendants. Defendants Conspired to inflict bodily harm against alli. Due to there actions and or inaction Plaintiff suffered the bodily harm as Stated within plaintiffs medical records. After the Jurys reviewance of Plaintiffs Photographs of injurys and medical record. Defendants willfully and Sadistically Conspired to maliciously assault, injure and bodily harm plaintiff. Defendants shall be Punished for their systematic actions. Plaintiff is requesting that Stated defendants are imprisoned for a duration of ten (10) years and for each defendant for the amount of Five Hundred Thousand dollars each.

## CLAIMS FOR RELIEF

141. Plaintiff repeates and realleges the Prior ly stated Paragraphs as if they were

(42.)

fully Set forth herein.

142. As stated Plaintiff was Subjected to malicious assault and Sexual abuse. Doc officials and policy making defendants have a long standing Practice and deeply embedded unwritten policy or doing so. furthermore plaintiff was with due process Violations and wrongful Confinement. Thus resulting into deprived due Process Clouse of the Constitution, loss of liberty, excessive force of the fourteenth, Eigth and fifth amendment of the Constitution, Cruel and Unusual Punishment and atypical and Significant hardship.

143. All defendants of this action acted under Pretense of Color of State law and in their official and individual Capacity, within and outside of their employment these defendants acted willfully, Knowingly, and with the intent to deprive Plaintiff of his Constitutional rights Secured by 42 U.S.C §1983 and the fourteenth, fifth, and eighth amendment of the United States Constitution

144. The Supervisory defendants, Policy making defendants, and City Of New York Knew of or should have Known that a long standing Pattern of excessive force and Sexual abuse in unmonitored areas and in Punitive segregation units, due Process deprivations, Unfair and unjust hearing Proceedings, and wrongful unsupported by due process and directive 6500-RB disciplinary Confinement Sanctions were being imposed on detainees, Said Practices existed in the City Jails Prior to, and during the times relevant hereto

145. The City of New York, Policy making defendant, Supervisory defenants failure to take measures to curb these Patterns Constitute acquiescence in the known unlawful behavior of Subordinates. The Prevalence of these Practice and general Knowledge their existence, Combined with the failure to take remedial actions despite the fact these issues

( 143 )

having been persistently brought to their attention constitutes deliberate indifferance. Deliberate indifference to the safety and rights of detainees in there care custody and control. The defendants herein conduct had been a substantial factor in the continuance of such violations and proximate cause of the constitutional violations alleged herein.

146. By permitting tolerating and sanctioning a persistent widespread policy, practice, and custom pursuant to which plaintiff was subjected to cruel and unusual punishment, loss of amenity, loss of liberty, physical harm, bodily injurys, and mental/emotional injuries.

## COUNT 1 ; EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS

Against Primary and Secondary officers for Sexual abuse and excessive force Pursuant to 42 U.S.C § 1983, 18 U.S.C 241-42.

147. Plaintiff repeates and realleges the priorly stated paragraphs as if they were fully stated herein with the same effect and force. The primary and secondary assaulting officers willfully violated plaintiffs constitutional rights by subjecting him to bodily harm, physical abuse and sexual abuse. For no legitimate non-punitive penological purpose.

148. These defendants acted in clear violation of Mr. Alli cleary established rights, and well-settled legal principles of which a reasonable person should have been aware of. Defendants are not entitled to a good-faith or qualified immunity defense. In direct result to defendants conduct or inaction plaintiff suffered seruere and permanet injuries. Defendants conduct demonstrated deliberate indifference to the substantial risk the excessive force and sexual abused posed to Mr. Alli health and safety. Plaintiff is entitled to damages for this conduct.

(4/4)

## COUNT II

Against defendants-John Doe field represenitives 1-6, Physicans, Rose Agro, Kathleen Mulley, Hildy J Simmons, Dora Schriro, Captain Beharri, and the City of New York for deliberate indifference to medical needs/medical care Pursuant to § 1983

149. Above stated defendants were on notice of Mr. Alli's medical needs and medical request for treatment. Notice was given by written request, verbal request, or review of plaintiffs medical reports and sustained injurys. Plaintiff made mutiple complaints to defendants, Yet defendants delayed, denied, Postponed, or otherwise interfered with Mr. Alli's access to medical treatment/care. Defendants had no legitimate Penological Purpose for said denials. Defendants acted in clear violation of well-settled law, of which a reasonable Person Should have been aware of. Defendants are not entitled to a good faith or qualified immunity defense. By their conduct, these defendants demonstrated deliberate indifference to the substantial risk Posed to plaintiffs health and safety. Mr. Alli is entitled to damages for said conduct.

## COUNT III

Against defendants Adjudication Captains 1 and 2, Captain Lisa Steward Bowden, and Captain Gates for Violation of due Process Ind wrongful Confinement. Pursuant to § 1983, § 1988.

150. Plaintiff repeates, realleges, and incorporates the Priorly stated Paragraphs as if they were fully stated herein with the same force and effect.

(45)

151. Pre-trail detainees are entitled to certain Procedural Protections whenever further loss of liberty Can result from disciplinary action.

152. Under the fourteenth Amendment, an detainee is entitled to (i) Advance notice of the charges against him, (ii) I hearing officer affording him a reasonable opportunity to call witness and Present documentary evidence; and (iii) a fair and impartial hearing officer, amongst other things.

153 This Standard is implemented and supplemented by D.O.C Directive 6500 R-B. Which establishes the Procedure for Processing Pre-hearing detention and inmate disciplinary infractions.

154. Defendants Adjudication captains I-2 Violated due Process Procedures as well as Mr. Alli's Constitutional rights by, amongst other things:

(i) failing to dismiss the infraction on due process Violations

(ii) failing to call requested witnesses

(iii) failing to credit Mr. Alli's account of the incident;

(iv) failing to take, review and Preserve crucial evidence, including witness account of incident, Video Tapes, medical records and Physical evidence;

(v) Turning a blind eye to inconsistencies in material facts stated in reports;

(vi) relying on facts outside of the evidentiary record;

(vii) Wrongfully confining Plaintiff to disciplinary Segregation

(viii) failing to consider Plaintiff mental health Status during the hearing

155. Captain Gates and Captain lisa steward-Bowden Violated Due process, Constitutional rights, add directive 5600 R-B, by amongst other things;

(i) failure to conduct an investigation within 24 hours of incident

(ii) failure to interview witnesses with Knowledge of the incident

(iii) If any, Conducting a bias investigation and;

(iv) aiding and abetting in the Cover-up methods to conceal truth of the incident.

156. Defendants Adjudication Captains 1 & 2 Incl Captain Gates, and Captain lisa Steward-Bowden, all acted in Clear Violation of well-settled law of which a reasonable Person should have been aware, and are not entitled to a good faith or qualified immunity defense.

157. These deficientcys led to Mr. Alli's disciplinary Confinement and loss of liberty without due process of law in violation of Mr. Alli's Cleary established rights. MR. Alli is entitled to damages for said Conduct.

## COUNT IV

Against City of New York and Policy-making Defendants for Due Process Violations Pursuant to § 1983

158. Plaintiff repeates and realleges and incorporates the Priorly Stated Paragraphs as if they were fully set forth herein with the Same force and effect.

159. The City and Policy-making defendants have for some time been on actual notice of the inadequacy of disciplinary hearing offered to inmates within DOC facilitys.

160. former and Current law suits brought notice and made Plain that adjudication captains and investigations Captains frequently fail to Credit inmates accounts of incidenct, failure to review and preserve Crucial evidence including witness accounts, videotapes, and other forms of evidence. Also the blatant failure to follow the directives that govern their position.

161. Stated defendants failure to take measure to correct these behaviors Created an enviroment where subordinates were and continued to Commit due process violations. Such failure to act constitutes deliberate indifference to the rampant Practices.

(47)

162. In many cases, and herein, Policy-making defendants affirmed hearing determinations. In doing so these defendants directly participated in the liberty deprivations imposed. Thus violating clearly established rights. Defendants are in clear violation of well-settled law in accordance to position and of which a reasonable person should have been aware, and are not entitled to a good faith or qualified immunity defense.

163. Mr. Alli is entitled to damages for this conduct.

## COUNT V

Against Municipal and Supervisory liability Pursuant to §1983 for all claims, against all defendants.

164. Plaintiff repeates, realleges, and incorporates the priorly stated paragraphs as if they was stated herein with full force and effect.

165. The City of New York, Policy making defendants, and supervisory defendants are municipal agents "whose acts may be fairly said to be those of the municipality."

166. These defendants failed to intervene to protect Plaintiffs Constitutional rights from infringement. Defendants were grossly negligent in supervising subordinates who commited the wrongful acts. Defendants aidded or abetted and or conspired to deprive, Participated in depriving, and or did deprive Plaintiff of certain Constitutionally protected rights including, but not limited to:

(i) the right to not be subjected to sexual abuse, bodily harm, or excessive force.

(ii) The right to be afforded a fair investigation and non-biased disciplinary hearing in connection which disciplinary infractions and offenses.

(48)

(iii) The right to medical care commensurate to B.O.C Health Care Minimum Standards and the United States Constitution;

(iv) The right to conditions of confinement commensurate to BOC Minimum Standards and the United States Constitution; and

(V) the right to complain about and or grieve all matters involving the Misconduct of D.O.C Officials

167. Defendants knew of or should have known that there employees, servants, agents, and subordinates had the propensity to engage in the illegal and wrongful acts described herein.

168. Indeed upon information and belief the Primary and Secondary assaulting officers have all been implicated in Misconduct including but not limited to Excessive force and or Sexual abuse.

169. In addition the City and policy-making defendants have been aware of for years that there employees, servants or agents routinely engaged in incidents of excessive force and or sexual abuse followed by conspired efforts to cover up wrong doings. Notice was given by ample state/federal Suits, notice of claims, Article 78'S, Press reports, internal investigations, Verbal/written Complaints made by detainees, or family members.

170. The City, Policy making defendants and Supervisory defendants Created, fostered, Perpetuated and Promoted unconstitutional Customs, Practices, and Policys by, amongst other things;

(i) failing to Protect and Supervise detainees

(ii) failing to equip Unmonitored areas, with Cameras or other devices to cease or reduce the incidents of Physical assault imposed on detainees.

(iii) failing to implement and develop Policys and Procedures sufficient to Safe-guard the health, safety and Welfare of detainees.

(iv) failing to enforce existing rules designed to safeguard the health Safety and welfare of detainess.

(v) failing to discipine and/or Prosecute Correction officers for employing excessive force against detainee. Or for engaging in other form of Misconduct.

(vi) failing to train and instruct Subordinate employees regarding the inmate grievance Procedure and the application of force if ultimately necessary. And failure to train adjudication captains how to Properly conduct a disciplinary hearing. and;

(vii) failing to monitor the conduct of employee to determine Whether DOC directives and Official Policys were in Compliant to.

171. Defendants herein acted in violation of well settled law of Employment and Position. In which they should have been aware of and are not entitled to a good faith defense or qualified immunity. These failures and deprivations facilitated, Promoted, and exacerbate the Unconstitutional Practices which Proximately caused the injurys alleged herein and Violated Plaintiff's clearly established rights.

172. Mr. Alli is entitled to damages for this Conduct.


## Additional Claims


173. At no point does Counts I through V limit any claim described within the body of the Complaint. As Plaintiff is a Pro se litigant and his Complaint shall be Construed liberally to raise any Possible Claims and the Strongest arguements therein. In addition Yet not limited to, Plaintiff asserts the following Claims;

(i) Claim for first amendments violations, against Primary and Secondary Officers for unlawful retaliation Pursuant to § 1983

(ii) Claim for assault and battery against Primary and Secondary assaulting officers

(iii) Claim for negligence against all defendants

(iv) Claim for negligent hiring and Supervision against Policy making defendants and the city.

(v) Claim for Conspiracy against all defendants

(vi) Claim for aidding and abetting against all defendants

(vii) Claim for vicarious liability Under respondeat Superior against city, Policy making defendants, and Supervisory defendants

174. ALL defendants acted under color of state law and violated the provisions throughout the body of this Complaint intentionally, willfully, and tortious. Plaintiff is entitled to damages

Plaintiffs Injurys

175. As a direct and Proximate result of the unlawful actions taken by the defendants named-herein, Plaintiff Suffered the following bodily Injurys, Physical harm, and/or mental damage in the form of, inter alia, Mental anguish, humiliation, emotional distress and the following Permanet and non-Permanent injurys. Including but not limited to spine damage, spleen damage, Continuing back Pains, testicle damage and Continuing testuclar Pains, Kidney damage, blood to Urine, abrasions, lacerations and Contusions. See Photographs of Some of the injurys, and See medical documents and hospital reports.

Prayer for Relief

Wherefore Plaintiff request that the Courts grant the following relief Jointly and individually against all defendants, as follows:

(1) Plaintiff seeks special damages, money damages, Punitive damages, and Compensatory damages for each Claim, Count, or violated right stated herein against all defendants Jointly and individually.

(ii) Plaintiff seeks to invoke, Title 18 U.S.C § 241- 242 against the Primary and secondary assaulting officers for sanctioning of Ten years in Prison and a fine of five hundred thousand dollars individually. Plaintiff also seek Public discipline and firing from employment without benefits.

(iii) Plaintiff seeks an seperate award of Two Thousand Dollars Each day spent in Punitive Segregation Wrongly confined.

(iv) Plaintiff seeks the Cost and the disbursement of this action and lawer fees if any.

(v) Award of Pre- and Post-Judgment interest, as permitted by law

(vi) In the event any defendant fails to plead and or is in default Judgment I hereby demand Two Hundred and Fifty thousand against each said defendant.

(vii) Granting of such other and further relief as this Court deems Just and Proper.

Amounts further to be determined at Jury trail

and or a total Sum of Ten million Dollars

Dated: September 21 2015
Dannemora New York

By: _____
Elmar Alli
Clinton Correctional facility, P
Dannemora New York 12929

(52)

Affidavit of Service

RECEIVED
SDNY PRO SE OFFICE

2015 SEP 23  PM 3: 08

CC;

STATE OF NEW YORK

COUNTY OF DANNEMORA

RE; 14 CIV 10257 (RA)(JLM)

Alli U. Peclar Et, Al

I Umar Alli Pro se Plaintiff in the above matter hereby sworn declares that on this 21st day of September 2015 I have mailed the below stated document to the below Stated Party . Said mailing was completed through first Class mail room of Clinton Correctional facility .

A. fifty-Two (52) Page first Amended Complaint.

To. Pro se Clerk, United States district Court, Southern District of N.Y 500 Pearl STREET. New York New york 10007

Dated. September 21 2015
Dannemora New york

Sincerely

Umar Alli  12 A1086
Clinton Correctional facility
P.O. Box 2000
Dannemora NY 12929

Sworn to before me on this
21 Day of September 20 15

Harry D. Durkan
Notary Public, State of New York
No. 01DU6008379
Qualified in Clinton County
Commission Expires 6/20/16

NOTARY PUBLIC