UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

Umar Alli,

                              Plaintiff,                                    14-CV-10257 (RA) (JLC)

              -against-

City of New York, Officer Matthew Pedlar, Shield No.
4988, Officer Antonio Bravo, Shield No. 17297, Officer
Geronimo Almanzar, Shield No. 40633, Captain Carter,
Shield No. 1086, Officer Paul Bunton, Shield No. 14371,
Captain Budnarine Behari, Shield No. 1603, Officer Spears,
Officer Rhor, Officer Fluker, Officer Wong, Captain Gates,
Captain Medina, Officer Kouroklis, Officer Sanchez,
Officer Nicholas Spiris, Shield No. 18445, Officer Lopez,
Officer Diaz, Officer Stokes, Captain Steward-Bowden,
Officer Villete, Officer Harris, Officer Estrella, Officer
Williams, John/Jane Doe Corrections Officers 1-20,
John/Jane Doe Corrections Department Physicians 1-3,
Dora Schriro, Rose Argo, Kathleen Mulvey, Hildy J.
Simmons, Florence Finkle, Lewis Finkelman, Michael J.
Regan, Richard T. Wolf, Kenneth T. Armstead, Investigator
I. Martinez, Investigator Garcia, Investigator Arnold,
Investigator Daggett-Terenzi, Pravin Rajan, M.D., Devorah
J. Nasarian, M.D., ADW Edmund Duffy, ADW Kenneth
Stukes, ADW Brian Sullivan, ADW Collins,

                              Defendants.
-----------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE OPERATIVE COMPLAINT AND DEFENDANTS' OPPOSITION TO THE SECOND AMENDED COMPLAINT

Plaintiff Umar Alli ("Plaintiff") brings this Section 1983 action against, inter alia, Defendants City

of New York, City of New York, City Department of Correction ("DOC") Officer Matthew Pedlar, Shield

No. 4988, Officer Antonio Bravo, Shield No. 17297, Officer Geronimo Almanzar, Shield No. 40633,

Captain Carter, Shield No. 1086, Officer Paul Bunton, Shield No. 14371, Captain Budnarine Behari,

Shield No. 1603, Officer Spears, Officer Rhor, Officer Fluker, Officer Wong, Captain Gates, Captain

Medina, Officer Kouroklis, Officer Sanchez, Officer Nicholas Spiris, Shield No. 18445, Officer Lopez,

Officer Diaz, Officer Stokes, Captain Steward-Bowden, Officer Villete, Officer Harris, Officer Estrella,

Officer Williams, John/Jane Doe Corrections Officers 1-20, John/Jane Doe Corrections Department Physicians 1-3, Dora Schriro, Rose Argo, Kathleen Mulvey, Hildy J. Simmons, Florence Finkle, Lewis Finkelman, Michael J. Regan, Richard T. Wolf, Kenneth T. Armstead, Investigator I. Martinez, Investigator Garcia, Investigator Arnold, Investigator Daggett-Terenzi, Pravin Rajan, M.D., Devorah J. Nasarian, M.D., ADW Edmund Duffy, ADW Kenneth Stukes, ADW Brian Sullivan, and ADW Collins. Docket No. 1.

Previously, Mr. Alli represented himself pro se.  On December 22, 2014, he filed his Original Complaint within the statute of limitations.  Docket No. 1.  The Original Complaint challenged a January 2012 and a February 2012 incident; identified certain Defendants by name; and identified other Defendants as "Doe."  Id.  On March 6, 2015, the Court held that Mr. Alli's Original Complaint's allegations were "sufficient to allow Corporation Counsel to identify at least some of [the Doe] Defendants by name."  Docket No. 6.  The Court then worked closely and regularly with the Parties throughout 2015 to identify those Doe Defendants with Valentin Orders and management of the same. See Docket, passim (various events described in greater detail in the factual background section below). On August 11, 2015, the Court ordered Mr. Alli to file a First Amended Complaint ("FAC") substituting the actual names of certain Doe Defendants.  Docket No. 46.  On September 23, 2015, Mr. Alli filed his FAC.  Docket No. 58.  In that pleading, he added the names of those Doe Defendants and others as well.

Beginning in December 2015, the Parties became embroiled in a dispute as to whether or not they had successfully settled the case.  Compare Docket No. 68 (the Court noting Defendants' report that the case settled), with Docket No. 74 (the undersigned's letter motion chronicling the disputed settlement). This dispute over the alleged settlement stalled pretrial progress and Defendants never answered the FAC.

On May 11, 2015, I made an appearance on Mr. Alli's behalf.  Docket No. 73.  The Parties engaged in motion practice relating to the enforceability of the disputed December 2015 settlement discussion, Docket Nos. 74-76, and on July 18, 2016, the Court granted Mr. Alli's motion to reopen,

<u>Docket No. 77</u>.  On September 28, 2016, after some correspondence with the Court, I filed Mr. Alli's Proposed Second Amended Complaint ("PSAC") for discussion at a pretrial conference.  <u>Docket No. 88-1</u>.  This pleading would replace the operative <u>pro se</u> pleading in the case, which Parties agree is the FAC.

Defendants have moved the Court for three kinds of relief, and Plaintiff opposes.  First, Defendants' motion seeks dismissal of claims against so-called "Newly-Named Defendants" (to be defined, <u>infra</u>) for failure to meet the relevant statute of limitations.  <u>Docket Nos. 92-95</u>.  Second and third, Defendants' motion opposes the filing of the PSAC to the extent that it makes claims against so-called New York City Board of Correction Defendants ("BOC Defendants," a term that will be defined <u>infra</u> as well) and a <u>Monell</u> claim against the City Defendant.  <u>Id.</u>  Defendants also oppose the filing of the PSAC on all three same grounds.  <u>Id.</u>

Mr. Alli now submits this response in opposition to the Defendants' motion to dismiss certain aspects of the FAC and to oppose the filing of the PSAC.[1]  Hereinafter Mr. Alli will simply refer to Defendants' motion as a "motion to dismiss" and asks that the Court understand that that term will refer to Defendants' motion to dismiss aspects of the FAC and Defendants' opposition to the PSAC.

## I.  Factual Background

### a.  Substantive Factual Background

Plaintiff refers to the PSAC at <u>Docket No. 88-1</u> for underlying allegations in this case, but will specifically discuss the Original Complaint's allegations as necessary to the Court's analysis of Defendants' motion.

---

[1] The procedural posture of Defendants' motion is a bit confusing (or at least Plaintiff finds it so) insofar as it simultaneously moves to dismiss claims from the FAC and opposes the filing of the PSAC on all the same grounds.  Plaintiff contends that the Court can simply deem the PSAC the operative complaint, then consider Defendants' arguments vis-à-vis that pleading, which only elaborates upon Mr. Alli's <u>pro se</u> FAC allegations, but which does not materially alter their nature or scope.  If the Court finds dismissal of any claims necessary, Plaintiff will modify that pleading and refile the document as a Third Amended Complaint on the Court's direction.

On January 10, 2012, on Rikers Island, Defendants Villette, Bravo, Behari, Rhor, Spears, Spiris, Kourouklis, Diaz, Stokes, Carter, Harris, Almazar, Pedlar and Does unjustifiably and excessively assaulted Mr. Alli in an incident that occurred in connection with his deposition testimony in a different civil case (and/or failed to intervene). Docket No. 88-1 ¶¶ 32-33, 39. Mr. Alli suffered injuries to his head, neck, back, and more as a result. Id. ¶ 36. He was taken to East Elmhurst Hospital, where doctors prescribed him a treatment plan. Id. ¶ 37. Yet once back on Rikers Island, Mr. Alli found that Defendants refused to take him to the clinic, and that Defendant Drs. Rajan and Nazarian refused to treat him when they came through his housing unit on rounds. Id. ¶ 37. According to Mr. Alli, Defendants' refusal to treat him as he suffered headaches, pain, blood in his urine and more, was part and parcel of Defendants' effort to cover up their unjustified and excessive assault upon him. Id. ¶¶ 37-38. At the same time Defendants refused to acknowledge Mr. Alli's injuries at their own hands, Defendant Pedlar filed a false infraction against Mr. Alli relating to the January 10, 2012, incident, and Mr. Alli's sparse medical record hid that Defendants beat Mr. Alli as badly as they did. Id. ¶ 38.

Defendant Investigating Captain Steward-Bowden, a Doe Adjudication Captain, and Defendant Investigators Garcia, Arnold, Daggett-Terenzi, I.Martinez and Doe Investigators, as well as the Assaulting Defendants, then deprived Mr. Alli of due process by misrepresenting evidence; failing to collect evidence Mr. Alli requested; withholding relevant evidence to the fact-finder that was in their possession, custody or control; and more. Id. ¶¶ 39-43. As a consequence, Mr. Alli received a guilty infraction disposition for wrongdoing he did not commit without having provided him with due process to defend against the false allegations, and Mr. Alli suffered a harsh disciplinary sentence of atypical and severe hardship compared to others in his position in terms of "cell space, cell amenities, recreation time, recreation facilities, privacy, time for meals, amount of food, ability to use the shower, access to personal toiletries and cleaning products, social activities, participation in programming, access to the telephone, access to visits, receipt of mail, access to commissary, access to the library, access to television, and

more" Id. ¶ 53. His punitive sentence resulted in his placement "in a housing area which had structural problems resulting in regular flooding when pipes leaked or fire sprinker systems would randomly go on." Id.

Mr. Alli made grievances relating to the same and alleged in his Original Complaint his cooperation with an investigation contemporaneous with the incident, but encountered investigating Defendants who worked for the inspector general and/or the agency's investigation division who "failed to adequately investigate and determine all of the John Doe Primary Assaulting Officers." Id. ¶ 92.

As Mr. Alli endured the violation of his due process rights and right to medical treatment in January and February 2012 and beyond, as detailed in his complaint, Mr. Alli "maintained a letter-writing campaign to various officials asking for their help in intervening to stop" the violations. Id. ¶ 44. "For example, Mr. Alli wrote and sent letters seeking help to" Defendants Schriro, Finkelman, Finkle, Regan, Simmons, Armstead, and Wolf at BOC ("BOC Defendants"). Id. ¶ 54. Mr. Alli chose to send letters to these BOC Defendants because they were "individuals whose positions dealt with policing rights violations and integrity problems within the DOC facilities." Id. Mr. Alli wrote to the BOC Defendants about "all of the . . . problems" pleaded in his complaint. Id. "Despite Mr. Alli's written pleas to . . . BOC Defendants . . . asking that they intervene to aid in [stopping] the violations of his rights, . . . BOC Defendants . . . , having received actual notice of the constitutional torts being committed, failed to remedy the wrong. Id. ¶ 56. And, as Mr. Alli observes in his complaint, the timeline was such that BOC Defendants "certainly had opportunity to remedy the wrongs as they continued to happen, yet no action was taken[.]" Id ¶ 57. Mr. Alli also reached out to the Legal Aid Society, which corresponded with officials on Mr. Alli's behalf. Id. ¶ 123.

BOC Defendants' failure to aid Mr. Alli continued through and beyond February 23, 2012, when Defendants Medina, Fluker, Wong, Estrella, Harris, Bunton and Williams assaulted Mr. Alli during a cell extraction (and/or failed to intervene). Id. ¶¶ 46-51. The February 23, 2012, assault was related to the

January 10, 2012, assault in that it began when Mr. Alli requested that different Corrections Officers than the ones who assaulted him during the January 10, 2012, incident conduct a cell search. <u>Id.</u> ¶ 46. Mr. Alli spoke to a chaplain and Defendant Captain Medina about his fears and his request. <u>Id.</u> There is a videorecording of this. <u>Id.</u> ¶ 48. Unfortunately, the conversation (and also the videorecording, perhaps) ended with angered corrections officers assaulting Mr. Alli while extracting him from his cell, and one of the Defendants—on information and belief, it may have been Defendant Bunton—inserted a finger or other object into Mr. Alli's rectum during the assault while ridiculing him. <u>Id.</u> ¶ 49. Mr. Alli once again suffered physical injuries as shown by medical records. <u>Id.</u> ¶ 51.

Defendant Bunton filed another false infraction report against Mr. Alli in the aftermath of the February 23, 2012, assault. <u>Id.</u> ¶ 50. The infraction report omitted the material information regarding Mr. Alli's reasonable request about his previous assailants, the video recording, and more. <u>Id.</u> Defendants Gates, Williams, Bunton, Fluker, Wong, Estrella, Harris, a Doe Adjudication Captain and Doe Investigators again deprived Mr. Alli of his due process rights in the infraction investigation/hearing, and Mr. Alli received a guilty disposition and atypical hardship on sentencing. <u>Id.</u> ¶ 52.

Mr. Alli makes extensive <u>Monell</u> allegations in the PSAC and respectfully refers the Court to that document, where he notes that the City Defendant was on notice of chronic officer-on-inmate excessive force at Rikers Island by virtue of findings made in this respect by government monitors and non-profit watchdog groups; news media articles; and individual inmate reports through lawsuit, notice of claim, 311 calls, grievances and more. <u>Id.</u> ¶¶ 58-62. Mr. Alli goes on to say that, in light of the City's knowledge, the spotty videocameraing at Rikers is an example of City policy/practices that enable officer-on-inmate violence to continue through acquiescence. <u>Id.</u> ¶ 68. For example, in this case, Mr. Alli alleges that on January 10, 2012, Defendants intentionally transported him to an area where they knew there was a gap in videocamera monitoring to assault him. These blind spots have become a known way for officers to assault inmates with impunity. Finally, Mr. Alli's <u>Monell</u> allegations address the specific histories of

certain Defendants—Pedlar, Behari, Bunton, Almanzar and Bravo—with respect to being sued for using force upon inmates. Id. ¶ 64. According to Mr. Alli, these preexisting allegations against these Defendants had the City on notice that without training, discipline and/or supervision of these Defendants, they would likely maliciously violate another inmate's rights, and they did—Mr. Alli's. Id.

Mr. Alli also makes extensive Monell allegations regarding the City's responsibility for the violation of his due process rights. Id. ¶¶ 59 (noting chronic manufacture of fabricated evidence against an inmate and investigators' and adjudicators' unwillingness to test the underlying facts); 60-61 (noting the great number of complaints about fabrication of evidence and failure to provide meaningful process to BOC Defendants, Warden Defendants, in litigations, Notices of Claim and 311 calls), 62 (noting court-ordered monitors and news attention on the issue). In light of Mr. Alli's allegations about the City's knowledge of the problem, he alleges that the City also knew that its practices and customs were so deficient either on paper or in execution, that they would cause other individuals' due process rights to be violated as well (and Mr. Alli's were). Mr. Alli also alleges that his direct outreach to policymakers asking that they intervene demonstrates the City Defendant's liability for the violation, which continued well after policymakers failed to act despite having notice of the violation. Id. ¶¶ 59, 63. "Institutional failure to address Correction Officers' violations of inmate rights amounts to constructive endorsement of the same and unwritten departmental policy that rights violations will be tolerated." Id. ¶ 67. Finally, Mr. Alli observes that at least one of the Individual Defendants—Beharri—was the subject of a very serious incident in the past which became the subject of a federal lawsuit. In that lawsuit, the plaintiff alleged that Behari falsely infracted him, and that a video tape flatly demonstrated the falsity of Beharri's bad-faith infraction. The case settled for a sizable amount. Id. ¶ 64. Mr. Alli alleges that once the City knew that Beharri had likely inflicted such grievous harm upon an inmate before, the City knew it would likely happen again. Id. However, given the nature of the allegations against Beharri in that case—that he maliciously lied about an inmate—Mr. Alli also alleges that even if the City could show retraining,

supervision and/or discipline, allowing Behari to have continuing contact with inmates was <u>per</u> <u>se</u> deliberate indifference to Mr. Alli's rights because falsely commencing charges against an inmate is malicious and not unknowing conduct.

Finally, Mr. Alli sought to hold Defendants accountable for their misconduct close in time to the challenged incidents by: filing grievances; cooperating with inspector general and investigations division inquiries; contacting the Legal Aid Society and having them reach out to officials on his behalf; writing to Warden Defendants, DOC Defendants and BOC Defendants; appealing his infraction dispositions; and filing Article 78 petitions relating to his infraction dispositions. <u>Id.</u> ¶¶ 123-129.

### b. Procedural Background

On December 22, 2014, Mr. Alli filed his Original Complaint against certain named Defendants and certain Doe Defendants. <u>Docket No. 1</u>. On January 13, 2015, and again on February 14, 2015, Mr. Alli requested that the Court provide him with help relating to the case as he had only previously been an IFP filer and he now sought help as a no-IFP <u>pro</u> <u>se</u>. <u>Docket Nos. 2, 4</u>.

On March 6, 2015, the Court entered a <u>Valentin</u> Order directing Corporation Counsel to aid Mr. Alli in identifying and serving Defendants, and found that the Original Complaint was "sufficient to allow Corporation Counsel to identify at least some of these Defendants." <u>Docket No. 6</u>. The Court noted the agreement between it and the NYC Department of Corrections and Local Civil Rule 33.2. <u>Id.</u> On March 16, 2015, Corporation Counsel appeared in the case. <u>Docket Nos. 7-8</u>.

Between March 6, 2015, and April 24, 2015, Mr. Alli wrote to Corporation Counsel seeking its compliance with the first <u>Valentin</u> order. <u>Docket No. 14</u>. When he had difficulty obtaining results, he wrote to the Court seeking more help identifying and serving Defendants. <u>Id.</u> On April 24, 2015, the Court entered another <u>Valentin</u> Order directing Corporation Counsel to aid Mr. Alli in identifying and serving Defendants. <u>Docket No. 18</u>.

Between April 24, 2015, and September 23, 2015, the docket is full of activity as Mr. Alli, the Court and Corporation Counsel cooperated to identify and serve Defendants. See Docket, passim. On August 11, 2015, the Court ordered Mr. Alli to file a FAC because certain Doe Defendants had been identified through the Court's and the Parties' collaborative process. Docket No. 46. The Court's Order specifically identified Defendants Medina, Murphy and Gates as identified Does.

On September 23, 2015, Mr. Alli filed his FAC. Docket No. 58. In addition to identifying Murphy, Medina and Gates as Does, Mr. Alli successfully identified twenty-three other Does from the discovery he collected at that point. These are the so-called "Newly-Named Defendants," thirteen of whom are the subject of Defendants' motion to dismiss. The Newly-Named Defendants fall into the following categories as described below. Also as described below, these Newly-Named Defendants were all referenced as Does in Mr. Alli's Original Complaint was filed within the limitations period, also as described below.

First, there were nine Newly-Named January 10, 2012, Assaulting Officer Doe Defendants: Gates, Villette, Lopez, Spiris, Sanchez, Kourouklis, Diaz, Stokes and Carter. They appeared in the Original Complaint as Does. Docket No. 1 ¶¶ 43-49 (discussing the January 10, 2012, assault and referring to twelve assaulting officers, only four of whom were identified at that time—Pedlar, Bravo, Almanzar and Beharri).

Second, there were three Newly-Named February 23, 2012, Assaulting Officer Doe Defendants: Estrella, Harris and Williams. They appeared in the Original Complaint as Does. Docket No. 1 ¶¶ 95-99 (discussing the February 23, 2012, assault and referring to "John Doe Officers" and a "John Doe Captain"). In light of Mr. Alli's reference to multiple Doe officers and a Doe captain in his Original Complaint, it is not unreasonable that three newly-named officers emerged during Valentin discovery.[2]

_____

[2] It should be noted that Defendants have not provided me with a copy of the underlying Valentin discovery in this case despite my repeated requests for the same starting from the moment the case was reopened. Recently, Defendants asked the Court for

Third, there were four Newly-Named Investigator Doe Defendants: Daggett-Terenzi, Arnold, I. Martinez and Garcia. They appeared in the Original Complaint as Does. Docket No. 1 ¶¶ 88, 92, 121, 128. It is reasonable that four newly-named investigators emerge from Valentin discovery in light of the allegations here.

Fourth, there were two Newly-Named Doctor Doe Defendants: Rajan and Nazarian. They appeared in the Original Complaint as Doe Physicians. Docket No. 1 ¶¶ 76, 79-80. Fifth, there are four Newly-Named Warden Doe Defendants: Stukes, Duffy, Sullivan and Collins. They appeared in the Original Complaint as Doe DOC Officials and Wardens. Docket No. 1 ¶¶ 80, 93, 133. Sixth and finally, there was one Newly-Named Investigating Captain Doe Defendant: Steward-Bowden. She appeared in the Original Complaint as Doe Investigating Captain 1. Docket No. 1 ¶¶ 85-91.

## II. Legal Standards

### a. Motion To Dismiss Pursuant To FRCP 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Doe v. N.Y., 97 F. Supp.3d 5, 10 (E.D.N.Y. 2015) (citing Brown v. Daikin Am. Inc., 756 F.3d 219, 225 (2d Cir. 2014)). In reviewing the complaint, the Court "accept[s] all well-pleaded allegations in the complaint as true [and] draw[s] all reasonable inferences in the plaintiff's favor." Id. (citing Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Com'n, 768 F.3d 183, 191 (2d Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

an extension to respond to my October 2016 document requests, which the Court granted (I consented to the request but only insofar as a concomitant extension of discovery generally was granted, which it was). Thus, if the Court would like to receive evidence as to the timing and nature of the Valentin identifications mentioned here, Mr. Alli respectfully requests that the Court order Defendants to produce the Valentin material and to allow the Parties supplemental briefing once the material is in hand. Perhaps obviously, at some point Mr. Alli had the Valentin material when he was a pro se litigant. Unfortunately, due to Mr. Alli's incarceration, he no longer has possession of the same. Mr. Alli was transferred between numerous correctional facilities over the course of the past year or so, which is when he lost possession of the records. Mr. Alli was released last week and resides in the New York City area at this writing. He would thus be available to testify in connection with this proceeding if the Court would find that helpful.

that the defendant is liable for the misconduct alleged." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). However, where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**b. NY CPLR § 1024's Relation-Back Standard Governing Statute Of Limitations Questions When A Plaintiff Identifies John Doe Defendants**

FRCP 15(c)(1)(C) provides a federal standard for when a plaintiff's amendment of a complaint relates back to the original pleading, but it is well-established that FRCP 15(c)(1)(C) does not permit relation back when a plaintiff who lacked knowledge of a John Doe defendant's name at the timely filing of an original complaint later learns the John Doe defendant's actual name and amends the complaint to add it. See Doe, 97 F. Supp.3d at 18 (citing Hogan, 738 F.3d at 518); see also Scott v. Vill. of Spring Valley, 577 F. App'x 81, 82 (2d Cir. 2014) ("[The plaintiff's] proposed amendment does not correct a mistake of fact [as required by FRCP 15(c)(1)(C), but rather seeks to add information—the names of the officers involved—that he lacked when he filed the complaint.").

However, FRCP 15(c)(1)(A) does allow for state relation-back standards to permit John Doe amendment under certain circumstances, that law permitting "an amended pleading to relate back when 'the [state] law that provides the applicable statute of limitations allows relation back.'" Doe, 97 F. Supp.3d at 18 (citing Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013)); see Fed. R. Civ. P. 15(c)(1)(A). As New York State law provides the 3-year limitations governing the claims in this action, FRCP 15(c)(1)(A) permits the application of New York relation-back law to the statute of limitations question in the instant case. See Smith v. City of N.Y., 1 F. Supp. 3d 114, 118 (S.D.N.Y. 2013).

"New York state law 'provides a more forgiving principle of relation back in the John Doe context, compared to the federal relation back doctrine under [FRCP] 15(c)(1)(C).'" Doe, 97 F. Supp.3d at 18 (citing Hogan, 738 F.3d at 518). Specifically, New York Civil Practice Law and Rules ("NY

CPLR") provides a "special procedure for claims alleged against John Doe defendants." Id. Codified at NY CPLR § 1024, that special procedure states that

> [a] party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known, if the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024.

Under NY CPLR § 1024, "a complaint relates back where: (1) the plaintiff 'exercised due diligence, prior to the running of the statute of limitations, to identify the defendant by name,' and (2) the plaintiff 'describe[d] the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." Id. (citing Hogan, 738 F.3d at 518-19).

A plaintiff "bears the burden of establishing that 'the case at hand falls within an exception to the limitations period.'" Dooley v. Columbia Presbyterian Med. Ctr., No. 06 Civ. 5644, 2009 WL 129941, at *3 (S.D.N.Y. Jan. 16, 2009) (quoting Minichello v. N. Assurance Co. of Am., 304 A.D.2d 731, 732 (2d Dep't 2003)).

### III. Discussion Of Defendants' Limitations-Based Motion To Dismiss

### a. Plaintiff's Section 1983 Claims Against So-Called "Newly-Named Defendants" Are Not Time-Barred Because The FAC/PSAC Relate Back To The Original Complaint's Filing Due To Plaintiff's Satisfaction Of The Requirements Of NY CPLR § 1024

Defendants' motion to dismiss on statute of limitations grounds is made on behalf of thirteen Newly-Named Defendants (Carter, Kourouklis, Gates, Sanchez, Spiris, Lopez, Diaz, Stokes, Steward-Bowden, Villette, Harris, Estrella and Williams). Docket No. 94 at 4. Nine of these are the Newly-Named January 10, 2012, Assaulting Officer Doe Defendants—Carter, Kourouklis, Gates, Sanchez, Spiris, Lopez, Diaz, Stokes and Villette. Three of these are the Newly-Named February 23, 2012, Assaulting Officer Doe Defendants—Harris, Estrella and Williams. One of these is the Newly-Named

Investigating Captain Steward-Bowden.  As noted above, the FAC and PSAC identified twenty-three Does, and so Plaintiff submits as a preliminary matter that the following Newly-Named Defendants appearing in the FAC and the PSAC are not the subject of Defendants' motion to dismiss, as their identification has not been challenged or briefed:  (1) the four Newly-Named Investigator Defendants Daggett-Terenzi, Arnold, I. Martinez and Garcia; (2) the two Newly-Named Doctor Defendants Rajan and Nazarian; and (3) the four Newly-Named Warden Defendants: Stukes, Duffy, Sullivan and Collins.[3]

Plaintiff will hereinafter refer to the thirteen Newly-Named Defendants that are the subject of Defendants' motion simply as "Newly-Named Defendants," and will now proceed to discuss Defendants' motion to dismiss those Newly-Named Defendants on statute of limitations grounds.  As mentioned in the legal standard for NY CPLR 1024, supra, in order for the Court to rule that the Newly-Named Defendants' presence in the FAC and PSAC relates back to the Original Complaint's filing within the statute of limitations, Plaintiff must demonstrate his due diligence, prior to the running of the limitations period, to identify each defendant by name, and that he described the Does in such form as would have fairly apprised them that they were the intended Defendants.  See N.Y. C.P.L.R. § 1024; Hogan, 738 F.3d at 518-19.

i.  **Plaintiff Exercised Due Diligence, Prior To The Running Of The Statute Of Limitations, To Identify The John Doe Defendants By Name**

Plaintiff exercised due diligence in attempting to identify the Does by name prior to the running of the statute of limitations, thus satisfying the first factor of NY CPLR § 1024.   He has shown this in a

---

[3] It should be noted that at the end of Defendants' brief they throw in some of these Newly-Named Defendants to say that they should be dismissed as well for all the same reasons.  If the Court considers this argument, made as an afterthought but without particularized briefing, Mr. Alli respectfully requests that the Court consider his arguments relative to the Newly-Named Assaulting Defendants to apply to all Newly-Named Defendants, because the arguments defeat any limitations-based motion to dismiss against them as well.

variety of ways both before filing this action and also after.[4] In <u>Ceara v. Deacon</u>, 68 F. Supp.3d 402, 409 (S.D.N.Y. 2014), the Southern District discussed what constituted a plaintiff's due diligence in seeking to identify John Doe officers and credited the plaintiff's letter to the Inspector General within the statute of limitations period seeking the names of the officers as due diligence sufficient to meet the first requirement of NY CPLR § 1024's relation-back provision.

Insofar as the correspondence in <u>Ceara</u> was credited as showing plaintiff diligence under Section 1024, Mr. Alli here has undertaken far more extensive efforts within the limitations period. As Mr. Alli's Original Complaint states, he filed grievances in 2012 when the incidents occurred; he gave testimony to investigators (though he alleges that their efforts were not robust) in that same era; he wrote multiple letters to BOC officials in early 2012 seeking resolution of the ongoing rights violations that arose as a consequence of the assaults; he appealed the dispositions of the infraction hearings that were held against him after the assaults; he filed Article 78 petitions relating to his infraction dispositions; he contacted the Legal Aid Society and asked that organization to seek investigation and remedy from agency officials, which they did; he wrote to DOC/Warden Defendants; and more. <u>See</u> <u>Docket No. 1</u> ¶¶ 123-129.[5] Thus, Plaintiff cannot be said to have failed to exercise due diligence in attempting to identify Newly-Named

---

[4] Although Plaintiff believes that the Court can find in his favor on this question, in the alternative, Plaintiff argues that he has shown a triable issue of fact on that question and respectfully requests an evidentiary hearing in connection with the Court's consideration of Defendants' motion to dismiss. <u>See</u> <u>Lepore v. Town of Greenburgh</u>, 120 A.D.3d 1202, 1204 (2d Dep't 2014) (observing that whether a plaintiff exercised "due diligence" in attempting to identify John Doe defendants may be a triable issue of fact). Beyond an evidentiary hearing, Plaintiff believes that such a triable issue of fact may be able to become part of the trial corresponding to the existing claims, as none of the contested Newly-Named Defendants are the only Defendants relative to each claim.

[5] This seems an appropriate place to state, as I have elsewhere in this brief, that Defendants are in possession of much of this material and that I have requested that they produce it to me repeatedly since the reopening of the case, to no avail. Defendants have obtained an extension on discovery production until January 2017. Thus, to the extent that the Court would like to review documentary evidence showing Mr. Alli's diligence in seeking to identify and hold Does accountable during the limitations period, I respectfully request that the Court grant the Parties a conference so that I may argue for an Order to Compel these records' production. In addition, Mr. Alli, who was released from custody last week, is available to provide live testimony to the Court at hearing if the Court would like to obtain evidence in this manner. Finally, and again I am repeating myself a bit, while true that Mr. Alli once had possession of some of these records, he lost possession of these during various transfers from one facility to another. This was prior to my representation of him.

Defendants prior to the expiration of the statute of limitations when Plaintiff repeatedly complained to the City about the assaults and the ongoing rights violations; pleaded for investigation; and gave the City all information in his possession that might facilitate investigation and remedy. Cf. Moran v. City of N.Y., No. 11 Civ. 3704 (PKC) (GRB), 2015 WL 1321685, at *8 (E.D.N.Y. Mar. 24, 2015) (stating that the plaintiff had not been diligent when the government responded to the plaintiff's request for an investigation by naming the John Doe officer).

Defendants argue that the Court did not issue its first Valentin Order in this case until March 6, 2015, which was after the limitations period expired. Docket No. 94 at 13. First, this argument ignores that Mr. Alli wrote to the Court twice within the limitations period asking for its assistance with his pro se case. Docket Nos. 2, 4 (both letters mailed within one or both limitations periods, though the Clerk of the Court posted the latter on a later date); Kennedy v. City of N.Y., No. 12 Civ. 4166 (KPF), 2015 WL 6442237, at *5 (S.D.N.Y. Oct. 23, 2015) (finding the plaintiff to have exercised due diligence when, through judicial process occurring after the timely filing of the complaint and largely, although not entirely, within the limitations period, the plaintiff diligently sought identification-related discovery from the court and the defendants then amended his pleading accordingly). Second, Defendants' point about the Court's Valentin Order ignores that Section 1024 inquires into Mr. Alli's diligence, not the response of a third party with whom he corresponds. For example, in Hogan, the Second Circuit found the plaintiff to have satisfied the due-diligence requirement of NY CPLR § 1024 when, despite the plaintiff's discovery requests to the attorney general's office "as counsel for the named defendants[,] [t]he named defendants, in turn, failed to respond fully to [the plaintiff's] requests." Hogan, 738 F.3d at 519. My point in citing to Hogan is not that the Court failed Mr. Alli in any way (indeed, the docket shows the Herculean efforts that the Court and the Parties made to identify the Newly-Named Defendants over the course of 2015); instead, my point is that the Hogan Court would consider the diligence that Mr. Alli showed regardless of what responses he obtained, and those include his grievances, appeals, Article 78,

Legal Aid Society outreach, participation in investigations, letters to BOC Defendants, letters to the Court, etc.[6] In light of the volume of Mr. Alli's efforts it should be noted, again, that it was Defendants' failure to respond adequately that ultimately deprived him of the Does' names on a more timely basis, and Defendants now unfairly ask the Court to reward their long-term indifference, recklessness and/or negligence to Mr. Alli's informal pleas to exempt them from his final, formal attempt to obtain a remedy for the harm they inflicted upon him.

### ii. Plaintiff Provided A Sufficient Description Of The John Doe Defendants In Such Form As Fairly Apprised Them That They Were The Intended Defendants

On March 6, 2015, after reading Mr. Alli's Original Complaint, the Court stated in its <u>Valentin</u> Order that it found "that the information in Plaintiff's complaint is sufficient to allow Corporation Counsel to identify at least some of these Defendants." <u>Docket No. 6</u>. Defendants present the Court with no new information that would justify its effective request that the Court reconsider that finding. Nor could they, as the finding was based on the text of Mr. Alli's Original Complaint, which remains today as it was on March 6, 2015. Thus, Plaintiff's satisfaction of the fair-notice prong of Section 1024 is law of the case, and Defendants cannot argue that Mr. Alli has not met it.

Even if the Court revisited the sufficiency of the Original Complaint's description of the Does, the information therein described the John Does "in such form as [would] fairly apprise [them] that [they were] the intended defendant[s]" (hereinafter the "fair-notice factor"). <u>Hogan</u>, 738 F.3d at 519. First, Plaintiff's Original Complaint described "with particularity the date . . . and location of the alleged . . . incident," which the Second Circuit has found relevant to NY CPLR § 1024's fair-notice factor. <u>Id.</u> In addition, it is of particular relevance to the Court's consideration of the effectiveness of that the January

---

[6] Given Mr. Alli's efforts, it is strange to note that Defendants discuss none of it, and only say that he "appears to have expended no efforts at all to identify the [John Doe Defendants]" within the limitations period. <u>Docket No. 94</u> at 13 (citing cases for this conclusory statement).

2012 and the February 2012 assaults were sufficiently severe and shocking, and Plaintiff's description of them reflect that, that the Does (and the Newly-Named Defendants moving to dismiss are only Assaulting Doe Defendants) were very fairly apprised that Mr. Alli was talking about them in the Original Complaint.  It should stand to reason that it should be rare that corrections officers' treatment of an inmate should not devolve into such an assault, and it should stand to reason that even the most modest City inquiry into the January 10, 2012, and February 23, 2012, incidents would undeniably alert the responsible officers to the fact that they were the ones involved.

Indeed, Defendants do not credibly argue as to whether and why Plaintiff's description of the incident in question would have failed to provide sufficient information to allow the Newly-Named Defendants to recognize themselves in the story had they heard it as the City investigated.  See Ceara, 68 F. Supp. 3d at 411; Kennedy, 2015 WL 6442237, at *5 (S.D.N.Y. Oct. 23, 2015) (noting that "courts have found that where a plaintiff provides specific contextual information, that may satisfy the description requirement of [NY CPLR § 1024]"); Duncan v. City of N.Y., No. 11 Civ. 3901, 2014 WL 3530858, at *3 (E.D.N.Y. July 15, 2014) (stating that a defendant was "fairly apprised that he was one of the John Doe defendants" because, among other things, the complaint "made clear that there was an additional unidentified officer whom [the plaintiff] specifically described as having participated" in the assault, which was the conduct the plaintiff attributed to the newly named defendant in the amended complaint); Maurro v. Lederman, 795 N.Y.S.2d 867, 871 (Sup. Ct. 2005) (holding that the plaintiff's description of the Jane Doe as "'the physician who treated [the plaintiff] at [the defendant's] office whose name is fictitious as presently unknown' was sufficient for [the] purpose" of meeting the fair-notice factor).  At best, Defendants suggest that Mr. Alli should have provided a physical description of the Does in his Original Complaint.  Docket No. 94 at 14 (noting that Mr. Alli's Original Complaint provided no physical description).  But it is well settled that having a physical description of a Doe in an original complaint is not a sine qua non to Section 1024 relation back.  See Kennedy, 2015 WL 6442237, at *5

(rejecting the defendants' argument that the plaintiff failed to meet the fair-notice factor because the plaintiff provided no physical description of the defendants, holding that "physical descriptions are not the only means through which a plaintiff may adequately put an intended defendant on notice").  From a policy standpoint, this is a sensible because in certain circumstances a plaintiff cannot describe his/her assailants' appearances due to the assailants' own misconduct.  See Hutchinson v. City of N.Y., No. 7 Civ. 841 (RJD) (CLP), 2010 WL 1437925, at *3 (E.D.N.Y. Feb. 8, 2010), adopted by 2010 WL 1438086 (E.D.N.Y. Apr. 9, 2010) (discussing a case in which the court found the plaintiff to have satisfied the fair-notice factor despite delay in naming John Doe defendants when "the defendants' actions prevented [the] plaintiff from discovering the true identities of the proper parties, thus causing the delay in naming them in the case" (citing Morrison v. Lefevre, 592 F. Supp. 1052, 1056 (S.D.N.Y. 1984)).

As in the Morrison case cited by the Court in Hutchinson, here, the Individual Defendants here created conditions which caused the delay in identifying the Does.  Defendants took Mr. Alli to a place where there were no video cameras and/or deliberately did not video record, thus depriving him and investigators of a clear record that would have identified the Does among them (this was the point).  It also stands to reason that the victim of a beating may not be in best position to focus on those around him and make note of detailed or even general physical characteristics.  See Kennedy, 2015 WL 6442237, at *5 (noting that the plaintiff's alleged head trauma and period of unconsciousness during the event in question were "conditions that would no doubt bear upon [the plaintiff's] ability to recall some details").

**b. Plaintiff's Section 1983 Claims Against Newly-Named Defendants Are Not Time-Barred Because The City Defendant—An Originally-Named Defendant—Was United In Interest With The John Doe Defendants Such That The FAC And PSAC's Post-Limitations Naming Of The Individual Defendants Relates Back To The Date Of The Original Complaint's Filing Under NY CPLR § 203(f)**

The Newly-Named Defendants also relate back to Doe Defendants in the Original Complaint under NY CPLR § 203(f).  NY CPLR § 203(f) provides that

[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

N.Y. C.P.L.R. § 203(f).

In <u>Bumpus v. New York City Transit Authority</u>, 66 A.D.3d 26, 34 (2d Dep't 2009), the court noted that "when an originally-named defendant and an unknown 'Jane Doe' party are united in interest, <u>i.e.</u>, employer and employee, the later-identified party may, in some instances, be added to the suit after the statute of limitations has expired pursuant to the 'relation back' doctrine of CPLR § 203(f), based upon post-limitations disclosure of the unknown party's identity."

In <u>Reznick v. MTA/Long Island Bus</u>, 7 A.D.3d 773, 774 (2d Dep't 2004), the court held that the lower court had "properly granted the plaintiff's motion for leave to serve and file an amended summons and a second amended complaint to [add a named defendant] as a defendant instead of "John Doe" because the plaintiff had also sued that individual defendant's employer the MTA/Long Island Bus. The named employee defendant "was united in interest with his employer, the defendant MTA/Long Island Bus, which was timely served." <u>Id.</u>

In <u>White v. City of Mount Vernon</u>, 38 A.D.3d 533, 534 (2d Dep't 2007), the court affirmed the lower court's grant of the plaintiff's motion for leave to amend the complaint to substitute the true names of John Doe defendants. The <u>White</u> court observed that pursuant to <u>Reznick</u>, the lower court "providently exercised its discretion in granting the plaintiff's motion," and "[t]he [lower court's] exercise of that discretion will not lightly be disturbed." <u>Id.</u> at 533 ("The appellant's claim that the plaintiff's motion should have been denied as time barred is without merit."); <u>see</u> <u>Holmes-Thompson v. N.Y.C. Transit Auth.</u>, 17 Misc.3d 1123(A), at *4 (N.Y.Sup. 2007) ("[T]here is no issue as to timeliness since [the actual defendant whose name the plaintiff had not known prior to the defendant employer's disclosure response] is united in interest with his [defendant] employer, . . . which was timely served."); <u>see also</u> <u>Bumpus</u>, 66

A.D.3d at 34-35 ("[W]hen an originally-named defendant and an unknown 'Jane Doe' party" have an employer-employee relationship, the Jane Doe party may be later identified after the expiration of the statute of limitations pursuant and that amended identification relates back); cf. Noga v. City of Schenactady Police Officers, 169 F. Supp. 2d 83, 92 (N.D.N.Y. 2001) (refusing to allow the plaintiff to substitute the defendant as the John Doe named in the original complaint under New York relation-back doctrine because the plaintiff had presented no argument that the defendant's "interests [were] united with the other defendants other than the fact that both [the defendant] and [one of the other defendants] are . . . police officers," and stating that "[h]aving the same employer is inadequate to establish that [the defendant's] interests were united with the other defendants' interests).

Here, Defendant City of New York was an originally-named Defendant in the Original Complaint and is also the Newly-Named Defendants' employer. Docket No. 1. Thus, insofar as the FAC and PSAC add Newly-Named Defendants as the John Doe Defendants, under NY CPLR § 203(f), the FAC and PSAC's naming of Individual Defendants relates back to the filing of the Original Complaint. "The sine qua non of the relation-back doctrine is notice," and "[w]here the allegations of the original complaint gave the defendants notice of the facts and occurrences giving rise to the new cause of action, the new cause of action may be asserted." Pendleton v. City of N.Y., 44 A.D.3d 733, 736 (2d Dep't 2007). Thus, under the unity and identity of interest theory set forth by Bumpus and the NY CPLR, if the City Defendant knows within the statute of limitations period, as it did here, that its Newly-Named Defendants are alleged to have been involved in a severe and unjustified beating of an inmate on a specific date and at a specific location, it stands to reason that all employers and employees united in interest had notice as of that date. Of course, this may not always be true in circumstances in which the City has decided that it has no unity of interest and has chosen not to defend its employees, but in the instant action, the City as the Individual Defendants' employer has apparently not observed such a marked separation of interests as

it has undertaken to defend its employees' actions before the Court as demonstrated by its filing of this motion to dismiss.

## IV. Discussion Of Defendants' Futility-Based Arguments To Dismiss Claims Against BOC Defendants And The <u>Monell</u> Claim

### a. Plaintiff's Claims Against The BOC Defendants Are Viable Claims

Plaintiff brings claims against the BOC Defendants for failing to intervene on his behalf despite his persistence in writing to these Individual Defendants repeatedly seeking their help. Defendants argue that these claims cannot stand. As a preliminary matter, Mr. Alli respectfully argues that the Court should construe Mr. Alli's <u>pro se</u> allegations in his Original Complaint and First Amendment Complaint liberally in weighing any of Defendants' futility challenges regarding Mr. Alli's claims. At the same time, Mr. Alli respectfully suggests to the Court that his Proposed Second Amended Complaint is the pleading to be considered whenever Defendants make futility arguments. <u>Docket No. 88-1</u>. Defendants already answered the Original Complaint which had claims against BOC Defendants. Now that the case is reopened and Defendants wish to oppose the BOC claims based on a futility argument, their position should be considered vis-à-vis the PSAC and not the FAC.

It should be noted in Mr. Alli's request that the Court consider the PSAC that Defendants do not oppose the FAC or the PSAC on the basis of undue delay, prejudice or dilatory motive. Indeed, it would be difficult for Defendants to make such an argument in light of Mr. Alli's continuously close cooperation with the Court and Defendants while the case was previously open, as evidenced in the procedural background detailed above and as evidenced by the docket generally, and in light of Mr. Alli's prompt and continuous engagement with the Court and Defendants since the case was reopened.[7]

---

[7] In the event that the Court is inclined to countenance a later-raised delay, prejudice and/or dilatory motive argument by Defendants, Plaintiff respectfully requests the opportunity to brief that question more fully.

In Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), the Second Circuit established various categories of conduct which might demonstrate the liability of a supervisory defendant for a constitutional tort. One category of such conduct that may give rise to supervisory liability includes when "the defendant, after being informed of [an alleged constitutional violation occurring] through a report or appeal, failed to remedy the wrong." Id. This is precisely what Mr. Alli alleges occurred in the instant case. Some years after Colon, in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), the Supreme Court held that a supervisor's "mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," and Defendants have vaguely cited to this as requiring dismissal of Mr. Alli's claims against BOC Defendants. However, Defendants do not acknowledge or discuss that Iqbal's restriction of Colon supervisory liability is limited to the circumstances that Iqbal expressly flagged, e.g., when racial discrimination is involved. See, e.g., Sash v. U.S., 674 F. Supp.2d 531 (S.D.N.Y. 2009) (stating that "[i]t was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected the argument that a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution"); D'Attore v. N.Y.C. Dep't of Corr., 2012 WL 4493977, at *7 (S.D.N.Y. Sept. 27, 2012) (stating that "where the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in Colon should still apply").[8] But that very specific circumstance—that Mr. Alli's rights were violated because Individual Defendants bore some discriminatory animus against him—has not been alleged in this case. Here, in accordance with Colon's personal involvement standards for supervisory defendants, and in particular the one which allows for supervisory liability when an individual supervisory defendant knows of a violation through report or appeal, Mr. Alli has adequately pleaded claims against the BOC Defendants.

---

[8] Defendants' argument that only two of Colon's personal-involvement factors have survived Iqbal ignores the distinctions drawn regarding cases showing discriminatory purpose and those which do not.

Next, Defendants argue that Mr. Alli has not alleged with the requisite specificity when he sent letters to BOC Defendants and what those letters said. However, Mr. Alli has in fact offered quite a few specifics, certainly enough for meaningful discovery to take place with respect to his claims. For example, Mr. Alli alleges that after when he was in NYC DOC custody between the January 2012 and February 2012 assaults (roughly a 30-day period), he was housed in a unit where his serious medical needs were being ignored so roundly that he was compelled to write to the BOC Defendants numerous times to remedy this violation of his rights; that the BOC Defendants were thus placed on notice of the same; and that the BOC Defendants were thus deliberately indifferent to the ongoing constitutional violation that Mr. Alli suffered during this weeks-long period. In light of the foregoing, the timing of Mr. Alli's claim against the BOC Defendants and the substance of his correspondence with them is quite clear.

Defendants also argue that Mr. Alli's allegations that BOC Defendants deliberately ignored his rights to due process and medical treatment are entirely conclusory. However, it is plain when one reasonably reads Mr. Alli's allegations together as a single narrative what he means when he talks about the due-process and medical-treatment problems he was suffering. For example, Mr. Alli relates in great detail how his due process rights were violated when Defendants filed a false infraction against him to cover up the assault; perpetrated a biased and process-less investigation into the infraction and Mr. Alli's protests regarding its falsity; and gave him an ultimately unfair and undeserved sentence. Furthermore, Mr. Alli very specficially details his lack of medical treatment with information about his post-assault wounds and ailments, about how often he requested treatment to no avail, and the consequences. In light of all this, when Mr. Alli also alleges that he wrote to the BOC Defendants various times about the

violation of his due process and medical-treatment rights, it is only natural to incorporate by reference all of his related, extensive allegations made in the pleading.[9]

### b. Plaintifs' <u>Monell</u> Claim Is A Viable Claim

Defendants argue that Plaintiff's <u>Monell</u> claim must fail because Mr. Alli "has not alleged any specific deficiency in the City's training program, choosing instead to merely condemn the actions of various supervisory officials." <u>Docket No. 94</u> at 20. In fact, Mr. Alli has alleged such specific deficiencies. For the sake of brevity, I will refer to allegations in the PSAC because, although none of them are new, they do elaborate upon <u>Monell</u> allegations found in Mr. Alli's Original and FACs when those <u>pro se</u> documents are liberally construed as they must be.

For example, Mr. Alli alleges that the City Defendant is liable for the excessive force he suffered by virtue of its custom of using videocameras very sparingly despite the fact that these monitors have the known effect of reducing correctional officers' use of excessive force upon their charges. Mr. Alli specifically alleges how the City's policy resulted in his assault here, as the policy equipped Defendants with knowledge of where specifically to transport Mr. Alli to beat him with impunity knowing that they were not being watched. <u>See</u> <u>Docket No. 88-1</u> ¶ 68.

A reasonably jury would view the anemic videocamera policy to be all the more likely to have been the cause of Mr. Alli's injury because at the same time the City Defendant declines to close the gaps in its videocamera policies and practices, the City Defendant is on ample notice that a culture of officer-

---

[9] As I have just discussed how Mr. Alli's allegations of due process violation and deliberate indifference to serious medical need strike at the heart of his complaints against the BOC Defendants, there is an obvious flaw in Defendants' final argument that "this case involves specific instances of excessive force and, as such, plaintiff has failed to plausibly allege an extensive and ongoing constitutional violation such that the supervisory official who reviews the grievance can remedy it directly." <u>Docket No. 94</u> (citing <u>Burton v. Lynch</u>, 664 F. Supp.2d 349, 360 (S.D.N.Y. 2009)). However, Defendants' statement about how an ongoing constitutional violation—such as the due process or deliberate indifference violations alleged here—can give rise to supervisory liability when a supervisor defendant had knowledge of it and failed to stop it, undermines their challenge of the BOC Defendant claims as they have been pleaded.

on-inmate violence has been noted by government watchdogs, the news media, inmates and more, and that absent improved measures to protect inmates, correctional officers will continue to violate inmates' rights. See Docket No. 88-1 ¶¶ 60-62, 68 (citing to a judicial monitor's report on the issue, citing to newspaper and magazine reports, citing to the great volume of lawsuits (as shown on public dockets), notices of claims and 311 complaints (anecdotally known but which discovery would corroborate) that individuals make about excessive force they have experienced).

What is more, the PSAC does not rely on broad-based allegations about officer-on-inmate violence at Rikers to make its Monell claim. It also points out the prevalence and seriousness of similar allegations against certain Individual Defendants in public records, i.e., Pedlar, Behari, Bunton, Almanzar and Bravo. Docket No. 88-1 ¶ 64. And it also notes a serious charge of a falsified infraction against Behari in the past, which was supported by video footage showing that Behari's false infraction was just that. Id.[10]

Taking all of these allegations from Mr. Alli's PSAC together (and which are expansions upon what was already in his well-written, exhaustive pro se Original and First Amended Complaints), Mr. Alli argues that he had pleaded a set of facts which, if discovery bears it out, could allow a reasonable jury to plausibly find Monell liability here either directly, through acquiescence, or through deliberate indifference to Mr. Alli's rights. He requests that the Court permit him to develop the evidentiary record so that he can ask a jury their view of an objective failing on the City's part in this case vis-à-vis the injury that Mr. Alli suffered.

**V. Conclusion**

---

[10] Defendants chide Mr. Alli for citing to federal dockets to make his case that the City Defendant knew that Individual Defendants were wont to violate his rights. It is not clear, particularly when certain federal civil rights lawsuits against these Individual Defendants allege such egregious conduct, why this is improper. Furthermore, Defendants' point ignores that Mr. Alli does not simply cite to such cases. He pairs those observations with other evidence of the City's knowledge of a problem as discussed above, i.e., government monitors of a perceived violence problem, news reports of the same, widespread inmate complaints of the same, etc.

In light of the foregoing, Mr. Alli respectfully requests that the Court **deny** Defendants' motion to dismiss his claims as to the Newly-Named Defendants, **deny** Defendants' motion to dismiss his claims against the BOC Defendants and the <u>Monell</u> claim; and to **grant him leave** to file his PSAC as it presently appears at <u>Docket No. 88-1</u>.

DATED:       December 21, 2016
                New York, New York

                               /s
                              Ryan Lozar
                              The Law Office of Ryan Lozar
                              305 Broadway, 10th Floor
                              New York, New York 10007
                              (310) 867-1562

                              *Attorneys for Plaintiff*